UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DIEDRE BUSH AND RAQUEL DIAZ on behalf of a class of all others similarly situated,<br><br>PLAINTIFFS,<br><br>- v. -<br><br>ANCIENT BRANDS, LLC,<br><br>DEFENDANT. | Case No. 5:21-cv-390 (LEK/ML)<br><br>Judge Lawrence E. Kahn |

**MEMORANDUM OF PLAINTIFFS DIEDRE BUSH AND RAQUEL DIAZ IN OPPOSITION TO MOTION TO DISMISS BY DEFENDANT ANCIENT BRANDS, INC.**

Dated: July 2, 2021    **CARLSON LYNCH, LLP**

Katrina Carroll (*pro hac vice*)
Kathleen Lally (*pro hac vice*)
Nicholas R. Lange (*pro hac vice*)
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Facsimile: (773) 598-5609
Email: kcarroll@carlsonlynch.com
Email: kshamberg@carlsonlynch.com
Email: klally@carlsonlynch.com
Email: nlange@carlsonlynch.com

*Additional counsel listed on signature page*

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1

II.  THE RELEVANT FACTUAL BACKGROUND AND THE ALLEGATIONS
     IN PLAINTIFFS' COMPLAINT ...............................................................................2

III. DISCUSSION.............................................................................................................4

     A.   The Complaint Puts Defendant On Notice Of The Labels At Issue,
          And The Documents That Defendant Attaches To Its Motion Show
          That There Can Be No Legitimate Confusion .........................................................5

     B.   The Complaint Provides Sufficient Particularity Regarding
          Defendant's Misrepresentation .................................................................................6

     C.   Defendant's Challenge To The Class Definition Is Premature...............................7

IV.  CONCLUSION..........................................................................................................9

i

Plaintiffs Diedre Bush and Raquel Diaz (collectively, "Plaintiffs") respond as follows to the motion to dismiss (Dkt. #10) filed by Defendant Ancient Brands, Inc. ("Defendant"):

## I. INTRODUCTION

This case involves allegations that Defendant sells a Bone Broth Protein product that misrepresents the nature and quality of its protein content by making a claim it contains a certain number of grams per serving of protein without providing the Percentage Daily Value of protein properly calculated by the Protein Digestibility Amino Acid Corrected Score as required by state and federal regulation. As such, the product's label misleads consumers into believing they are receiving a certain number of grams of protein when, in fact, the protein is largely indigestible and provides little benefit to consumers. If the Percentage Daily Value were accurately calculated by the Protein Digestibility Amino Acid Corrected Score and provided to the consumer, consumers would know this.

In their Complaint, Plaintiffs identify Defendant's product, the alleged misrepresentation regarding the protein content, when Plaintiffs purchased the product, and where. Instead of simply responding to the Complaint and moving this case forward, Defendant chose to file a cursory motion to dismiss contending it somehow does not know which labels are at issue in this case, purportedly because the labels have changed over time. But the only way that Defendant's argument has any merit is if the allegations of Plaintiffs' Complaint and the labels that *Defendant* attached to its motion to dismiss are entirely ignored. Indeed, and as discussed herein, the material Defendant attached to its motion demonstrate both that whatever changes to the label may have occurred did not affect the claims Plaintiffs have properly pleaded and that there should be no confusion about which labels are at issue.

## II. THE RELEVANT FACTUAL BACKGROUND AND THE ALLEGATIONS IN PLAINTIFFS' COMPLAINT

Despite Defendant's attempt to feign confusion, the claims and labels at issue in this case are plainly set out in the Complaint. Plaintiffs allege that Defendant sells a Bone Broth Protein product in a variety of flavors that misleads consumers by making a representation regarding the amount of protein in the product without providing the Percentage Daily Value properly calculated by the Protein Digestibility Amino Acid Corrected Score ("PDCAAS") method as required by the Food, Drug, and Cosmetics Act. *See* Compl. (Dkt. #1) ¶¶ 1-3, 25-46. More specifically, the product states that it has a certain number of grams of protein per serving on the front of its label but does not provide a properly calculated Percentage Daily Value for protein as part of the nutrition facts. *See id.* ¶¶ 36-39. Plaintiffs allege that if the Percentage Daily Value of protein were properly calculated pursuant to the PDCAAS and stated on the product's label, the amount of protein would be lower than consumers expect due to the type of protein (*i.e.*, collagen) used in the product. *See id.* ¶¶ 1-3, 38-41. In other words, the product's label misleads consumers into believing they are receiving a certain amount of protein when, in fact, the protein in the product provides little to no actual benefit to consumers. *See id.* If the PDAACS were accurately calculated, displayed as the Percentage Daily Value, and provided to consumers, consumer would be aware of this. *See id.*

The Complaint then shows examples of labels that contain the representation that the product has a certain number of grams of protein per serving on the front but does not provide a properly calculated Percentage Daily Value for protein as part of the nutrition facts. *See* Compl. (Dkt. #1) ¶¶ 36, 38. Plaintiffs themselves allege that over the course of several years they both purchased Defendant's Bone Both Protein product in the Pure and Vanilla flavors. *See id.* ¶ 47 ("Plaintiff [Bush] has purchased the Pure and Vanilla flavors of Defendant's Bone Broth Protein several times since 2017, including from Amazon.com and The Vitamin Shoppe."); *id.* ¶ 50

("Plaintiff Diaz has purchased the Pure flavor of Defendant's Bone Broth Protein regularly from 2018 through present, including from Sprouts Farmers Market and Target.").[1]

Plaintiffs also allege that they saw Defendant's protein claims and that those claims affected their purchasing:

> Prior to purchasing the Product, Plaintiff Bush saw the claims on the front and back of the packaging that the Product contained 20 grams of protein per serving, which claim she relied on when deciding whether to purchase the Product. Plaintiff Bush, like other members of the Classes, purchased the product with the expectation that it would supplement her diet and boost muscle gain and recovery. She believed that the Product contained 20 grams of protein per serving and would provide the [Percent Daily Value] of protein consistent with the representation of 20 grams of protein per serving and would provide a benefit to her consistent with what consumers expect other protein powders to provide with respect to their protein claims.

Compl. (Dkt. #1) ¶ 48; *see also id.* ¶ 51. Importantly, the material submitted by Defendant show that the labels of the products for the flavors that Plaintiffs purchased, the Pure and Vanilla flavors, contain the same misrepresentation, regardless of the year it was in circulation or any other ministerial changes that might have been made to those labels. *See* Request for Judicial Notice (Dkt. #10-1) at Exs. 1-4 (each label for the Pure and Vanilla flavors contains a representation on the front that there is a certain number of grams of protein per serving and each label does not provide a properly calculated Percentage Daily Value for protein as part of the nutrition facts).[2]

Based upon these allegations, Plaintiffs have brought claims under the consumer protection statutes of the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota,

---

[1] Unless stated otherwise, all emphasis is supplied, and all internal citations and quotations are omitted from all material quoted herein.

[2] Though it does not appear that Defendant supported all portions of its Request for Judicial Notice with appropriate evidence (for example, the draft labels were not supported by an affidavit that those labels were placed into the market), Plaintiffs do not object to Defendant's request that the Court take judicial notice of the labels.

3

Missouri, New Jersey, New York, and Washington (*see* Compl. (Dkt. #1) ¶¶ 66-100)), as well as for breach of warranty, fraudulent concealment, and unjust enrichment (*see id.* ¶¶ 100-121).

### III.     DISCUSSION

To survive a motion to dismiss, a complaint need only plead enough detail to provide defendant with fair notice of the plaintiff's claims and set forth "enough facts to state a claim to relief that is plausible on its face." *Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 452 (E.D.N.Y. 2013). The Court "must accept the factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Ackerman v. Coca-Cola Co.*, 2010 WL 2925955, *4 (E.D.N.Y. 2010). When a complaint also alleges fraud, those allegations "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Hughes*, 930 F. Supp. 2d at 452.[3]

As can be seen from the allegations in their Complaint, Plaintiffs have satisfied their pleading burden, having identified the labels they saw, the specific misrepresentation at issue, why that misrepresentation is misleading and/or fraudulent, the time frame for when the products were purchased, and where. *See* Compl. (Dkt. #1) ¶¶ 47-54; *supra* 2-4. Moreover, the material submitted by Defendant bolsters Plaintiffs' allegations. *See* Request for Judicial Notice (Dkt. #10-1) at Exs. 1-4. Accordingly, Defendant's motion should not be well-taken and should be denied.

---

[3] Defendant does not clarify which claims it believes are subject to the heightened pleading requirement of Fed. R. Civ. P. 9(b). *See* Mot. to Dismiss (Dkt. #10) 3-5. Claims under New York's General Business Laws, for example, are not subject to the requirement that they be pled with particularity, nor are claims for breach of express warranty. *See Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, *13 (S.D.N.Y. 2016); *Columbia Sav. and Loan Ass'n v. Am. Int'l Grp., Inc.*, 1994 WL 114828, *5 (S.D.N.Y. 1994). Regardless, Plaintiffs have satisfied their pleading burden under either standard. *See infra* 5-9.

### A. The Complaint Puts Defendant On Notice Of The Labels At Issue, And The Documents That Defendant Attaches To Its Motion Show That There Can Be No Legitimate Confusion

Though the basis for Defendant's motion is not entirely clear, Defendant appears to contend the Complaint does not allow Defendant to identify the labels that are at issue in the case, because the labels for Defendant's product purportedly have changed over time. *See* Mot. to Dismiss (Dkt. #10) 4. The Complaint, however, makes clear that the labels at issue are those for the Bone Broth Protein product that make a representation about the number of grams of protein per serving on the front but do not provide a properly calculated Percentage Daily Value for protein using the PDAACS method as part of the nutrition facts. *See* Compl. (Dkt. #1) ¶¶ 1-3, 25-52. Both Plaintiffs allege they purchased Defendant's Bone Broth Protein product, specifically in the Pure and Vanilla flavors, and describe the protein representations they saw. *See id.* ¶¶ 47-51.

Defendant attempts to muddy the waters by claiming that because Plaintiffs purchased over the course of several years and because the labels purportedly changed, Defendant cannot be sure which labels are at issue. *See* Mot. to Dismiss (Dkt. #10) 4. Defendant, however, does not explain how the labels have changed in a manner that would affect the issue that is central to Plaintiffs' Complaint, and the labels that Defendant attaches to its Request for Judicial Notice in the flavors purchased by Plaintiffs contain the very misrepresentation at the heart of this case. *See* Request for Judicial Notice (Dkt. #10-1) at Exs. 1-4 (each label for the Pure and Vanilla flavors contains a representation on the front that there is a certain number of grams of protein per serving and each label does not provide a properly calculated Percentage Daily Value for protein as part of the nutrition facts). As such, the documents *Defendant* submitted demonstrate there can be no legitimate confusion about the labels at issue. *See id.*

## B. The Complaint Provides Sufficient Particularity Regarding Defendant's Misrepresentation

To the extent that it was necessary for them to do so, Plaintiffs have also satisfied the pleading requirements of Fed. R. Civ. P. 9(b). As discussed above, Plaintiffs alleged that Defendant sells a Bone Broth Protein product in a variety of flavors that mislead consumers by making a representation regarding the amount of protein in the product without providing a properly calculated Percentage Daily Value for protein using the PDAACS method as part of the nutrition facts, which, Plaintiffs further allege, would be lower than consumers expect due to the type of protein used in the product. *See* Compl. (Dkt. #1) ¶¶ 1-3, 25-46. Plaintiffs also alleged they saw these representations on Defendant's products in both the Pure and Vanilla flavors at various times since 2017 and have provided the locations from which the products have been purchased. *See id.* ¶¶ 47-52. Plaintiffs supported these statements with screen shots from Defendant's products. *See id.* ¶¶ 36, 38.

In short, Plaintiffs have pled (1) the statements they contend are false or misleading, namely, representations regarding the grams per serving of protein without providing the properly calculated Percentage Daily Value using the PDAACS method; (2) the speaker, Defendant on the labels for its Bone Broth Protein product; (3) where and when the statements were made, for example, on Defendant's labels for its Bone Broth Protein product, which Plaintiffs saw on the Pure and Vanilla flavors since 2017 at Amazon.com, The Vitamin Shoppe, Sprouts Farmers Market and Target; and (4) why they were fraudulent, because the labels violate state and federal regulations and mislead consumers about the amount of protein they actual receive. *See* Compl. (Dkt. #1) ¶¶ 1-3, 36-52.

These allegations fully satisfy the requirements of Fed. R. Civ. P. 9(b), and courts in New York have accepted similar allegations. *See*, *e.g.*, *Ashour v. Arizona Beverages USA LLC*, 2020

6

WL 5603382, *5 (S.D.N.Y. 2020) ("The complaint specifies that the statement '[n]o [p]reservatives' is fraudulent and includes images of the actual product labels displaying these statements. The complaint alleges that Defendants made the statements … where the statements were made, where and when Plaintiff saw these statements … and where the beverages were purchased… Lastly, Plaintiff explains why these statements were fraudulent."); *Paulino v. Conopco, Inc.*, 2015 WL 4895234, *7 (E.D.N.Y. 2015) (plaintiffs' allegations that "Conopco misled consumers that its Products were "Naturals" … because they contained numerous unnatural, synthetic ingredients" were sufficient when plaintiffs attached examples of the products and "indicated the time-period over which they purchased the Products, where they purchased the Products, and which particular products they bought"); *Hughes*, 930 F. Supp. 2d at 465-66 (plaintiffs' allegations met the pleading standard when they "clearly identify themselves, defendants, and the contested products at issue; they identify the specific representations made via the product's packaging, labeling, and marketing that are allegedly misleading; they identify where the allegedly fraudulent statements were made, namely, at particular retail stores . . . they clarify the time period at issue . . . they assert how defendants' representations are deceptive. . . and, lastly, plaintiffs allege why defendants' statements are fraudulent …").

## C. Defendant's Challenge To The Class Definition Is Premature

Finally, Defendant appears to challenge to the scope of Plaintiffs' proposed class, contending that the products at issue are not specifically identified because Plaintiffs have not included an exhaustive list of Defendant's Bone Broth Protein flavors. *See* Mot. to Dismiss (Dkt. #10) 4-5. The cases on which Defendant relies, however, are readily distinguishable as they do not even identify the *products* at issue. In *Segedie,* for example, the court concluded that while the plaintiffs listed a variety of different baby food and body products, they could not also include unnamed, similar products as part of their complaint. *See Segedie v. Hain Celestial Grp., Inc.*,

7

2015 WL 2168374, *12 (S.D.N.Y. 2015) ("[T]he Complaint also states that 'Falsely Labeled Organic Products' include 'but are not limited to' the products listed by name in the Complaint…a plaintiff challenging a product label as misleading must at least identify the product and the misleading label.").[4]

In contrast, Plaintiffs here have specifically identified the product at issue, Defendant's Bone Broth Protein, as well as the representation they are challenging on the label. *See supra* 2-4. The only unknown is which specific *flavors* of Defendant's Bone Broth Protein should ultimately be included in the scope of the class, something that can be determined through discovery. Moreover, the material Defendant has attached to its motion indicates there was little variation in the labeling for Defendant's Bone Broth Protein product: thirteen of the fourteen labels that Defendant submitted obviously contain the misrepresentation at issue in the Complaint. *See* Request for Judicial Notice (Dkt. #10-1) at Exs. 1-13 (making a protein content claim, but not providing a properly calculated Percentage Daily Value for protein at all, let alone one using the PDAACS method, in the nutrition facts). Only one product does not *obviously* contain the misrepresentation at issue, as it provides a Percentage Daily Value for protein as part of the nutrition facts, but as made clear in the Complaint, Plaintiffs also allege that Defendant does not

---

[4] The other cases cited by Defendant are similarly inapposite. In *Wang*, the court dismissed the complaint because though the plaintiff referred to "a wide range of marketing materials and [ ] representative examples … [he did] not specify the material that caused him to rely on OCZ's representations." *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 627 (N.D. Cal. 2011). Plaintiffs, however, have alleged that the protein claim on the front of the labels were what caused them to purchase Defendant's product. *See* Compl. (Dkt. #1) ¶¶ 48, 51. Similarly, in *Carrillo*, the complaint was dismissed because the plaintiff failed to plead damages, something Defendant does not challenge. *See Carrillo v. Wm. Wrigley Jr. Co.*, 2010 WL 11596523, *4-5 (C.D. Cal. 2010); *but see* Compl. (Dkt. #1) ¶¶ 49, 52 (pleading damages).

*properly calculate* the Percentage Daily Value using the PDAACS method, an issue that cannot be resolved on a motion to dismiss. *See id.* at Ex. 14; Compl. (Dkt. #1) ¶¶ 1-3, 25-46.

Regardless, the Complaint only brings claims on behalf of consumers that purchased Defendant's Bone Broth Protein products that make a protein claim but fail to provide a properly calculated Percentage Daily Value for protein using the PDAACS method as part of the nutrition facts. *See* Compl. (Dkt. #1) ¶¶ 1-3. There is simply nothing ambiguous about the products or claims at issue, and the scope of the class is more properly resolvable at the class certification stage, following discovery.

### IV. CONCLUSION

For the reasons stated herein and in the Complaint, Plaintiffs respectfully request the Court deny Defendant's motion to dismiss. In the alternative, if the Court finds Plaintiffs have not clearly stated any portion of their claim, Plaintiffs respectfully request leave to amend their Complaint.[5] Plaintiffs further request any other such relief that the Court deems appropriate.

Dated: July 2, 2021

Respectfully submitted,

CARLSON LYNCH LLP

/s/ Kathleen P. Lally
Katrina Carroll (*pro hac vice*)
Kathleen Lally (*pro hac vice*)
Nicholas R. Lange (*pro hac vice*)
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240

---

[5] Despite Defendant's characterization, Plaintiffs did not file an amended complaint at Defendant's demand to "burden" Defendant or the Court with motion practice but rather Plaintiffs believed that their allegations were sufficient and asked for more information from Defendant regarding the purported labeling changes to determine whether an amendment was truly necessary. Defendant elected not to provide this information. As such, Plaintiff hardly acted in bad faith, let alone bad faith that would warrant a sanction of denying leave to file a first amended complaint early in the litigation. *Cf. Oneida Indian Nation of New York State v. Cty. of Oneida, N.Y.*, 199 F.R.D. 61, 80-81 (N.D.N.Y. 2000) (noting "[f]ew courts have denied leave to amend on the basis of bad faith" and denying leave based in part on the fact that litigation had been on-going for 25 years).

Chicago, IL 60602
Telephone: (312) 750-1265
Facsimile: (773) 598-5609
Email: kcarroll@carlsonlynch.com
Email: klally@carlsonlynch.com
Email: nlange@carlsonlynch.com

**FINKELSTIEN, BLANKINSHIP, FREI, PERSON & GARBER, LLP**
Todd S. Garber
One N. Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
Email: tgarber@fbfglaw.com

*Counsel for Plaintiffs and the Proposed Class*

**CERTIFICATE OF SERVICE**

I, Kathleen P. Lally, hereby certify that a copy of the foregoing Memorandum Of Plaintiffs Diedre Bush And Raquel Diaz In Opposition To Motion To Dismiss By Defendant Ancient Brands, Inc. was filed with the Court's CM/ECF system which provides notice to all counsel of record registered for ECF notification.

Dated: July 2, 2021

Respectfully submitted,

CARLSON LYNCH LLP

/s/ Kathleen P. Lally
Katrina Carroll (*pro hac vice*)
Kathleen Lally (*pro hac vice*)
Nicholas R. Lange (*pro hac vice*)
**CARLSON LYNCH, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Facsimile: (773) 598-5609
Email: kcarroll@carlsonlynch.com
Email: klally@carlsonlynch.com
Email: nlange@carlsonlynch.com