UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

DIEDRE BUSH AND RAQUEL DIAZ on behalf
of a class of all others similarly situated,

                Plaintiff,

    -against-                           05:21-CV-0390 (LEK/ML)

ANCIENT BRANDS, LLC,

                Defendant.

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.      INTRODUCTION

Plaintiffs Diedre Bush and Raquel Diaz ("Named Plaintiffs") commenced this action on April 5, 2021, on behalf of a class of others similarly situated, alleging a variety of state law claims arising from Ancient Brands, LLC's ("Defendant's") labeling of its Bone Broth protein products. <u>See</u> Dkt. No. 1 ("Complaint").

Now before the Court is Defendant's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), for failure to meet the requirements of Fed. R. Civ. P. 8 and 9(b). Dkt. Nos. 10 ("Motion" or "Motion to Dismiss"), 22 ("Response"), and 23 ("Reply"). Also before the Court is Defendant's request for Judicial Notice of several of its past and current product labels. Dkt. No. 10-1 ("Request for Judicial Notice"). For the reasons that follow, the Request for Judicial Notice is granted in part and the Motion to Dismiss is denied.

## II.      BACKGROUND

### A.  The Parties

Plaintiff Diedre Bush is a citizen of New York. Compl. at 14.[1] She alleges that she "purchased the Pure and Vanilla flavors of Defendant's Bone Broth Protein several times since 2017, including from Amazon.com and The Vitamin Shoppe." Id.

Plaintiff Raquel Diaz is a citizen of California. Id. She alleges that she "has purchased the Pure flavor of Defendant's Bone Broth Protein regularly from 2018 through present, including from Sprouts Farmers Market and Target." Id.

Defendant, Ancient Brands LLC, is a maker of nutritional supplements. Id. at 3. It is a Florida Limited Liability Corporation with a principal place of business in Franklin, Tennessee. Id.

## B. The Allegations

Plaintiffs allege that Defendant engaged in unfair and/or deceptive business practices by intentionally misrepresenting the nature and quality of the protein in its products. See id. at 2. Specially, Plaintiffs object to Defendant's statement on the front of its packaging that its products contain 20 grams of protein per serving, given the lack of a corresponding corrected daily value percentage in the Supplement Facts panel. See id. at 9.

Ordinarily, under the Food, Drug, and Cosmetics Act ("FDCA"), Plaintiffs note, the protein content of food may be calculated based on its nitrogen content, and nutritional labels must contain only a statement of the number of grams of protein per serving. Id. at 8. However, where a manufacturer makes a "protein content claim," it is also required to display a daily value percentage calculated using the Protein Digestibility Amino Acid Corrected Score ("PDCAAS"). Id. Here, Plaintiffs allege, by advertising 20 grams of protein on the front of its packaging but

---

[1] For the sake of clarity, citations to all filings refer to the pagination generated by CM/ECF, the Court's electronic filing system.

failing to provide a corrected daily value percentage, Defendant has misled consumers. See id. at 9–11.

The lack of a corrected daily value percentage is particularly misleading, Plaintiffs contend, because the primary source of protein in Defendant's products is collagen, a protein source with a PDCAAS of zero. Id. at 12. Thus, Plaintiffs argue, Defendant's products contained protein that was "mostly indigestible and contained a negligible amount of protein for [plaintiffs' bodies] to use." Id. at 14, 15.

Both Named Plaintiffs state that they saw the claims on the front and back of the packaging prior to purchasing the products and assert that they would not have purchased the products had the labels contained accurate corrected daily value percentages in their supplement facts panels. Id. In their Complaint, Plaintiffs provide images of the front of packages of Defendant's Bone Broth Protein in four flavors: Chocolate, Pure, Turmeric, and Vanilla. Each package advertises that it contains 20g of protein per serving. Id. at 10–11. The Complaint also includes the supplement facts panel from the Pure flavor. Id. at 12. The panel shows 20 g of protein per serving but does not provide a daily value percentage. Id. Plaintiffs do not specify whether the labels shown in the Complaint are the precise labels that they saw prior to purchasing the products.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire

Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555).

In addition, where a plaintiff's claims sound in fraud, they are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). Meserole v. Sony Corp. of Am., No. 08-CV-8987, 2009 WL 1403933, at *3 (S.D.N.Y. May 19, 2009). Rule 9(b) requires that the complaint "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy that requirement, the complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).

"In considering a motion under Fed. R. Civ. P. 12(b)(6) to dismiss a complaint for failure to state a claim on which relief can be granted, [a] district court is normally required to look only to the allegations on the face of the complaint." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007). However, in certain limited circumstances, a court may consider documents besides the pleadings in deciding a motion to dismiss. For instance, "documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Beauvoir v. Israel, 794 F.3d 244, 248 n.4 (2d Cir. 2015) (internal quotation marks omitted). Likewise, "when a plaintiff chooses not to attach to the complaint or incorporate by

reference a document upon which it solely relies and which is integral to the complaint, the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995) (internal quotation marks omitted). "To be integral to a complaint, the plaintiff must have (1) 'actual notice' of the extraneous information and (2) 'relied upon the documents in framing the complaint.'" <u>DeLuca v. AccessIT Grp., Inc.</u>, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (alterations and some internal quotation marks omitted) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)). "[A] plaintiff's <u>reliance</u> on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." <u>Chambers</u>, 282 F.3d at 153 (emphasis in original). Furthermore, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the of the document," and "[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." <u>DiFolco v. MSNBC Cable L.L.C.</u>, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation marks omitted).

## IV.   DISCUSSION

### A.  Judicial Notice of Defendant's Labels

Defendant requests that the Court take notice of fourteen of its labels, which it has attached to its Motion to Dismiss. The labels include the company's 2018 labels for its Bone Broth Protein in the Vanilla, Pure, Chocolate, Turmeric, Coffee, Salted Caramel, Pumpkin, Banana, and Pineapple flavors. Dkt. Nos. 10-2, 10-4, 10-6, 10-8, 10-10, 10-11, 10-13, 10-14, 10-

15. Defendant also includes its in-market labels for its Vanilla, Pure, Chocolate, Turmeric, and Salted Caramel flavors. Dkt. Nos. 10-3, 10-5, 10-7, 10-9, 10-12.

"Plaintiffs do not object to Defendant's request that the Court take judicial notice of the labels" nor dispute the accuracy of the labels. Resp. at 5 n.2. As such, the Court accepts the authenticity of the documents and takes judicial notice of them.

Still, before taking the documents into account when deciding Defendant's Motion to Dismiss, the Court must consider whether Plaintiff had actual notice of the labels and whether they relied upon them in framing the Complaint. There is no question that Plaintiff's had actual notice and relied upon Defendant's in-market labels for the Chocolate, Pure, Tumeric, and Vanilla flavors, as Plaintiffs included images of these labels in their Complaint. Compl. at 10–11. Named Plaintiffs also describe viewing the labels of and purchasing Defendant's Vanilla and Pure flavors dating back to 2017 and 2018. Id. at 14. Thus, the Court finds that Plaintiffs relied on and had actual notice of Plaintiff's 2018 labels in the Vanilla and Pure flavors. Plaintiffs' Complaint, in describing the proposed classes, also references the Coffee and Banana flavors and "any other limited, discontinued, or seasonal flavors, and any other Ancient Nutrition Bone Broth Protein products that make a protein claim but fail to state the amount of protein as a percentage of daily value and/or as calculated by the Protein Digestibility Amino Acid Corrected Score method." Id. at 1. However, the Complaint does not clearly rely on the 2018 labels for the Coffee and Banana flavors and never even mentions the Salted Caramel, Pumpkin or Pineapple flavors. Thus, it is not clear to the Court that Plaintiffs had actual notice of and relied on the provided labels for these flavors in framing the Complaint. Furthermore, the labels for the Salted Caramel, Pumpkin, Pineapple, Coffee and Banana flavors are not relevant to Defendant's Motion to Dismiss. For these reasons, while the Court takes notice of all of the labels attached to

Defendants Motion, in addressing the Motion it considers only the in-market labels for the Chocolate, Pure, Tumeric, and Vanilla flavors (Dkt. Nos. 10-3, 10-5, 10-7, 10-9) and the 2018 labels for the Vanilla and Pure flavors (Dkt. Nos. 10-2, 10-4).

### B.  Motion to Dismiss

Defendants contend that Plaintiffs' Complaint fails to comply with the pleading requirements of Fed. R. Civ. P. 8 and 9(b). In particular, Defendant argues that by specifying only that Plaintiff Bush began purchasing the products in 2017, that Plaintiff Diaz began purchasing the products in 2018, and that both Named Plaintiffs saw the labels prior to purchasing the products, Named Plaintiffs have failed to provide fair notice of precisely which labels they relied upon. See Mot. at 4. In addition, Plaintiffs include in their Complaint images of several of Defendant's current in-market labels, which did not yet exist in 2017 and 2018. See Dkt. Nos. 10-3, 10-5, 10-7, 10-9 (indicating that the new labels were approved on January 13, 2020).

The Court recognizes that Plaintiffs, through their class definitions, allege claims implicating all of Defendant's Bone Broth Protein products that contain a protein claim and do not present a corrected daily value percentage. Should the proposed classes be certified, the present dispute over exactly which labels Named Plaintiff's relied upon may become immaterial. However, at this stage, no class has been certified and the Named Plaintiffs themselves must sufficiently allege claims to meet the relevant pleading requirements.

Under Fed. R. Civ. P. 9(b), when a complaint alleges fraud, it must "state with particularity the circumstances constituting fraud." "To satisfy that requirement, the complaint must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements

were fraudulent.' In re Banco Bradesco S.A. Sec. Litig., 277 F. Supp. 3d 600, 629 (S.D.N.Y. 2017) (quoting ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007)). Here, Plaintiffs have clearly articulated the statements they contend are fraudulent, have identified Defendant as the speaker, and have explained why they believe the statements were fraudulent. Thus, the question for the Court is whether Plaintiffs have sufficiently alleged where and when the statements were made. Plaintiffs have provided a general time period—2017 to the present— and have specified the products on which they saw the statements and the retailers from which they purchased the products. However, Plaintiffs have not made clear precisely which version(s) of the labels they saw.

In determining whether Plaintiffs' Complaint complies with Fed. R. Civ. P. 9(b), the Court finds it instructive to consider two cases decided in the Northern District of California. In the first, Jones v. ConAgra Foods, Inc., 912 F. Supp. 2d 889 (N.D. Cal. 2012), the defendant argued that plaintiffs had failed to plead the "when" requirement of Fed. R. Civ. P. 9(b) because they stated only that they bought the products "since April 2008." Id. at 902. The court found this "sufficient to put Defendant on notice of the claims against it." Id. However, the Court found that more specificity was required with regard to one particular product because the plaintiffs acknowledged that the product's label had recently been changed to remedy its incorrect labeling of a preservative. Id. at 902–03.

In the second case, Bruton v. Gerber Prod. Co., No. 12-CV-02412-LHK, 2014 WL 172111, (N.D. Cal. Jan. 15, 2014), the court declined to grant judicial notice of the defendant's 171 exhibits purporting to show relevant product labels and how they had changed over time. Id. at 5. The Court then found that a named plaintiff's allegation that she had purchased products "throughout the class period, which runs from May 11, 2008 to the present," was sufficient to

place the defendant "on notice as to the time period in which" the allegations arose. Id. at 13. In distinguishing Jones, the court noted that plaintiffs had not acknowledged any change in the labels and reiterated that questions about changes in the labels amounted to a "factual dispute . . . not appropriately resolved at the pleadings stage." Id. at 13 n.8.

Here, Named Plaintiffs have stated only the years in which they began purchasing the products rather than the month. Nonetheless, as in Jones, the Court does not find imprecision about the date sufficient to deny Defendant fair notice of the claims against it. The question, then, is whether Plaintiffs' acknowledgement that Defendant's labels changed after 2018 requires Plaintiffs to be more specific about the dates of their purchases or the precise labels on which they relied. The Court finds that Plaintiffs' Complaint is sufficient under Rule 9(b) for two reasons. First, and most importantly, Plaintiffs make clear that they purchased the product both before and after the change in the label, rendering further specificity unnecessary. In particular, both Named Plaintiffs allege that they first purchased the product in 2017 or 2018, well before the current labels—approved on January 13, 2020—came into usage. Compl. at 14. Furthermore, Plaintiff Diaz purchased the products "regularly from 2018 through present." Any reasonable interpretation of this allegation suggests that Plaintiff also purchased the products in the time between January 2020 and the commencement of this suit in April 2021. While it is possible that other label changes also occurred, any such changes are a factual question "not appropriately resolved at the pleadings stage." Bruton, No. 12-CV-02412, 2014 WL 172111, at *13.

Secondly, unlike in Jones where the acknowledged label change negated one of Plaintiff's claims, here the changes in labeling are minimal and both versions of the labels include the content that forms the basis of Plaintiffs' claims. The Court recognizes the possibility that the relatively minor changes to other aspects of the labels may become relevant. However,

given the fact that Named Plaintiffs purchased products with both the new and old labels and that Plaintiffs' claims are plausible with regard to both the new and old labels, the Court finds that Plaintiffs have complied with the pleading requirements of Fed. R. Civ. P. 9(b).

In addition, Defendant takes issue with Plaintiff's description of which products it alleges were incorrectly labeled. See Mot. at 6–7. Plaintiffs list a number of specific flavors of Bone Broth Protein, but also include "any other limited, discontinued, or seasonal flavors, and any other Ancient Nutrition Bone Broth Protein products that make a protein claim but fail to state the amount of protein as a percentage of daily value and/or as calculated by the Protein Digestibility Amino Acid Corrected Score method." Compl. at 1. As Defendant notes, courts have dismissed claims that do not clearly identify the products in question. See Mot. at 6–7 (citing Segedie v. Hain Celestial Grp., Inc., No. 14-CV-5029, 2015 WL 2168374, at *2, 12 (S.D.N.Y. May 7, 2015)). Plaintiffs respond by characterizing Defendant's objection as an attempt to challenge the class definitions, and arguing that this case is distinguishable from Segedie. See Resp. at 9–11. Here, Plaintiffs contend, they have identified the product as Bone Broth Protein and described the alleged misrepresentation, whereas in Segedie the plaintiffs attempted to attack any falsely labeled organic product.

Characterizing Defendant's objection as an attempt to challenge the class definitions does not negate the requirement that Plaintiffs comply with the dictates of Rule 9(b). "The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25–26 (2d Cir. 2016) (quoting O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)). Here, Plaintiffs have precisely described the alleged

wrongdoing and provided several examples of the allegedly offending labels, ameliorating any concern that the charges are improvident or intended as a strike suit. Furthermore, by limiting their suit to a single product line and precisely defining the aspects of the packaging which are allegedly misleading, Plaintiffs have provided Defendant fair notice of their claim consistent with Rule 9(b).

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Court takes notice of Dkt. Nos. 10-2, 10-3, 10-4, 10-5, 10-6, 10-7, 10-8, 10-9, 10-10, 10-11, 10-12, 10-13, 10-14, and 10-15; and it is further

**ORDERED**, that Defendant's Motion to Dismiss under 12(b)(6) (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      November 10, 2021
            Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge

11