UNITED STATES DISTRICT COURT
<u>NORTHERN DISTRICT OF NEW YORK</u>

STEPHEN DUNN and RAQUEL DIAZ
*on behalf of all others similarly situated*,

                Plaintiffs,

    -against-                       5:21-CV-390 (LEK/ML)

ANCIENT BRANDS, LLC,

                Defendant.

_____

<u>**MEMORANDUM-DECISION AND ORDER**</u>

## I.    INTRODUCTION

Plaintiff Raquel Diaz, individually and on behalf of a class of others similarly situated, commenced this action against Defendant Ancient Brands, LLC, on April 5, 2021, alleging unfair and deceptive business practices. Dkt. No. 1 ("Complaint"). Plaintiffs filed an amended complaint that added Stephen Dunn as a named plaintiff on April 5, 2022. <u>See</u> Dkt. No. 59 ("Amended Complaint").

Presently before the Court is Defendant's motion for judgement on the pleadings. Dkt. No. 85 ("Motion"). Plaintiffs oppose the motion. Dkt. No. 98 ("Response"). Defendant has submitted a reply to Plaintiffs' Response. Dkt. No. 99 ("Reply").

For the reasons that follow, Defendant's Motion is granted.

## II.    BACKGROUND

The following facts, which the Court assumes to be true at this stage, are taken from the Amended Complaint and Plaintiffs' deposition testimony, Dkt. Nos. 98-2 ("Diaz Deposition Transcript"), 98-3 ("Dunn Deposition Transcript").

A. **Factual History**

Defendant is a Florida Limited Liability Company that sells nutritional products throughout the United States under the brand "Ancient Brands." Am. Compl. ¶¶ 1, 9. Defendant's Bone Broth Protein products (the "Product(s)") are a series of powdered bone broth that are added to hot or cold drinks. Id. ¶ 17.

The Products advertise "20g Protein" on the front label and state that there are 20 grams of protein per serving in the Nutrition Facts Panel ("NFP") on the back of the Products. Id. ¶¶ 36, 38. However, the corresponding percentage daily value ("%DV") for protein, which indicates how much a serving of the Product contributes to a consumer's recommended daily protein intake, are not present in the NFP. Id. ¶ 38. The main source of protein in the Products is collagen, which has a Protein Digestibility Corrected Amino Acid Score ("PDCAAS") of 0— meaning that the protein is indigestible. See id. ¶¶ 3, 40. PDCAAS is the measurement of the protein value in human nutrition. See id. ¶ 28.

1. *Plaintiff Dunn*

Dunn is a citizen of the state of New York. Am. Compl. ¶ 47. He purchased several of the Products from GNC in early 2020. Dunn Dep. Tr. 13:7–19. Dunn decided to purchase the Product after seeing the "20g Protein" claim on both the front and back of the Product. Am. Compl. ¶ 48. Dunn bought the Product to supplement his diet and increase his protein intake, and believed he would be receiving a %DV of protein consistent with the advertised 20g Protein per serving. Id. Dunn was unaware that the Product contained mostly indigestible protein; as a result, he claims that he "would not have purchased the Product or paid more for the [P]roduct than he otherwise would have." Id. ¶ 49.

### 2. *Plaintiff Diaz*

Diaz is a citizen of the state of California. Am. Compl. ¶ 50. She purchased the Products regularly from 2018 through 2022. Id. Diaz opted to purchase the Product after seeing the "20g Protein" claim on both the front and back of the Product. Id. ¶ 51. Plaintiff Diaz purchased the Product to supplement her diet and boost muscle gain and recovery, and similarly believed she would be receiving the %DV of protein consistent with the "20g Protein" per serving advertisement. Id. Like Dunn, Diaz was unaware that the Product contained mostly indigestible protein and claims that she "would not have purchased the Product or paid more for the [P]roduct than she otherwise would have." Id. ¶ 52.

Plaintiffs assert the following causes of action against Defendant: (1) violation of "state consumer protection statutes"; (2) violation of New York General Business Law ("NY GBL") §§ 349 & 350; (3) violation of California's Unfair Competition Law ("UCL"); (4) violation of California's Consumer Legal Remedies Act ("CLRA"); (5) violation of California's False Advertising Law ("FAL"); (6) breach of express warranty; (7) fraudulent concealment; and (8) unjust enrichment. Id. ¶¶ 18–27.

### III.   LEGAL STANDARD

The standards under Federal Rule of Civil Procedure 12(c) and Federal Rule of Civil Procedure 12(b)(6) are "indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 (2d Cir. 2003). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., 9 F.4th 91, 94 (2d Cir. 2021) (quotation marks and citation omitted). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff.

See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV.    DISCUSSION

Plaintiffs appear to bring two separate claims of misrepresentation in Defendant's labeling. First, Plaintiffs bring a "front-of-label" claim in which they allege misrepresentations from Defendant's failure to use the PDCAAS calculation for the "20g Protein" nutrient content claim displayed on the front of the Product. Resp. at 19. Second, Plaintiffs bring a claim in which they allege misrepresentations from Defendant's failure to include the %DV for protein in the NFP on the back of the product. Resp. at 17.

Defendant states that Plaintiffs' claims must be dismissed because: (1) Plaintiffs do not have Article III standing; (2) Plaintiffs do not have statutory standing; and (3) Plaintiffs' state law claims are preempted by federal law. Mot. at 8–9. The Court addresses each argument in turn.

### A.  Article III Standing

To establish Article III standing, a plaintiff must show that: (1) she suffered an "injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized . . .

and (b) actual or imminent, not conjectural or hypothetical; (2) there was a causal connection between the injury and the conduct complained of; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up). The "causal connection" prong requires that the plaintiff's injury be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Id. at 560.

The Second Circuit has held that "'at [the pleading] stage of the litigation,' the plaintiffs' 'burden . . . of alleging that their injury is "fairly traceable" to' the challenged act 'is relatively modest.'" Rothstein v. UBS AG, 708 F.3d 82, 92 (2d Cir. 2013) (quoting Bennett v. Spear, 520 U.S. 154, 171 (1997)). Although the nexus is most easily established if there is "a direct relationship between the plaintiff and the defendant with respect to the conduct at issue," indirectness of an injury "is not necessarily fatal to standing, because the fairly traceable standard is lower than that of proximate cause." Id. at 91. Although "an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause," it is "not necessarily a basis for finding that the injury is not fairly traceable to the acts of the defendant." Id. at 92 (quotation marks and citation omitted). In order to prevail in response to a motion to dismiss on standing grounds, for instance, a plaintiff's injury "would satisfy the fairly traceable requirement if they had alleged all the links in the chain of causation." Heldman v. Sobel, 962 F.2d 148, 156 (2d Cir. 1992) (citing Allen v. Wright, 468 U.S. 737, 757–58 (1984)).

Here, Plaintiffs' Amended Complaint on its face alleges a sufficient causal connection between Plaintiffs' injury (paying more for a product than they otherwise would have) and Defendant's conduct (the "20g Protein" nutrient content claim on the front of the package and the missing %DV in the NFP). In their Amended Complaint, Plaintiffs allege that they "saw the

claims on the front and back of the packaging that the product contained 20 grams of protein per serving." Am. Compl. ¶¶ 48, 51. Plaintiffs also claim that "[h]ad Defendant disclosed the amount of %DV as required by law, Plaintiff[s] [] would have noticed that the Product provided a negligible amount of consumable protein and would not have purchased the product or paid more for the product than [they] otherwise would have." Id. ¶¶ 49, 52.

Although the Amended Complaint alleges facts sufficient to establish Article III standing, Defendant points to Plaintiff's deposition testimony to call into question (1) whether Plaintiffs purchased the Product because of the 20g protein claim; (2) whether they looked at the NFP prior to purchase; and (3) whether Plaintiffs would have understood the %DV, such that they would have chosen not to purchase the Product if it was present. See Mot. at 21–23. The Court addresses these arguments for each respective Plaintiff.

### 1. Plaintiff Dunn

Defendant asserts that Dunn does not have standing because he did not rely on the omission of the %DV in the NFP when purchasing the Product. See Mot. at 21–23. Defendant points to the fact that Dunn does not "specifically recall reading that portion of the label before making [his] purchases," and did not specifically "indicate[] that the suit was at all motivated by the absence of %DV." Id. at 22. However, Defendant's proffered degree of specificity is beyond what is required for Article III purposes.

In his Amended Complaint, Dunn states that he viewed both the front and the back of the Product when considering whether to purchase the Product. Am. Compl. ¶ 48. Dunn further confirmed this in his deposition testimony:

> Q. When you picked the product off the shelf, did you turn it around and read the back of it?
> A. I don't know how in detailed I read the back of it, but I'm sure that I did.

> Q. Okay. You said before that you turned the label around and you've read the whole thing, although you don't remember in particular what you saw?
> A. Correct.

Dunn Dep. Tr. 26:6–10, 28–29:24–4.

Furthermore, even if Dunn had not viewed the back of the Product, his allegations would still establish *prima facie* standing under Article III. The front of the Product specified that it contains twenty grams of protein, despite the fact that this protein was purportedly not digestible. Plaintiffs assert that this claim misleads "the reasonable consumer to expect that he or she would receive a significant percentage of his or her daily value of protein from a serving." Am. Compl. ¶ 41. Thus, even if Dunn had not seen the back of the Product, his exposure to Defendant's claim on the front of the packaging establishes the necessary link in the chain of causation for him to bring his claim that Defendant's misleading labelling influenced his purchasing decision. This is enough to meet the low bar of Article III standing. See Rothstein, 708 F.3d at 91 (holding that indirectness of an injury "is not necessarily fatal to standing, because the fairly traceable standard is lower than that of proximate cause.").

### 2. *Plaintiff Diaz*

In her Amended Complaint, Diaz states that she viewed both the front and the back of the Product when considering whether to purchase the Product. See Am. Compl. ¶ 51. As discussed, this is all that is required at this stage to establish all the links in the chain of causation and satisfy the "fairly traceable" standing requirement. Heldman, 962 F.2d at 156 (finding that a plaintiff's injury "would satisfy the fairly traceable requirement if they had alleged all the links in the chain of causation.").

### B. Statutory Standing

    1.  *Plaintiff Dunn*

Plaintiffs allege in Count II that Defendant violated NY GBL §§ 349, 350, and bring this claim on behalf of Dunn and the New York Subclass. Am. Compl. ¶ 75.

The Second Circuit has considered whether a Plaintiff can have "statutory standing." See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc., 821 F.3d 352, 359 (2d Cir. 2016). The Second Circuit notes that the Supreme Court has clarified that "what has been called 'statutory standing' in fact is not a standing issue, but simply a question of whether the particular plaintiff 'has a cause of action under the statute.'" Id. (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 127 (2014)). This inquiry is not considered a "standing" issue because "the absence of a valid . . . cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998). Therefore, "statutory standing" simply "amounts to an argument that Plaintiff has failed to allege damages sufficient to state a claim under GBL §§ 349 and 350." Richardson v. Edgewell Pers. Care, LLC, No. 21-CV-08275, 2023 WL 1109646, at *3 n.3 (S.D.N.Y. Jan. 30, 2023) (citing Harry v. Total Gas & Power N. Am., Inc., 244 F. Supp. 3d 402, 417 n.8 (S.D.N.Y. 2017), aff'd as modified, 889 F.3d 104 (2d Cir. 2018)).

Here, Dunn and the New York Subclass have alleged "damages sufficient to state a claim under GBL §§ 349 and 350." Id. The Amended Complaint clearly lays out facts to support that Dunn was intentionally misled by deceptive conduct and false advertising, and "sustained damages" because of this conduct. Am. Compl. ¶¶ 36–46, 71–76. Dunn has thus established statutory standing under New York law.

    2.  *Plaintiff Diaz*

The claims alleging violations of California's Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL") are brought on behalf of Diaz and the California Subclass.

To establish statutory standing under the UCL and FAL, a plaintiff must allege that "he or she suffered an injury in fact and has lost money or property as a result of a defendant's alleged conduct." Carrea v. Dreyer's Grand Ice Cream, Inc., No. 10-CV-01044, 2011 WL 159380, at *2 (N.D. Cal. Jan. 10, 2011) (cleaned up), aff'd, 475 F. App'x 113 (9th Cir. 2012); see also Cal. Bus. & Prof. Code §§ 17204, 17535. The phrase "as a result of" requires "a showing of a causal connection or reliance on the alleged misrepresentation." Kwikset Corp. v. Superior Court, 246 P.3d 877, 887 (Cal. 2011). A plaintiff may establish causation by showing that "in the absence of the defendant's misrepresentation or omission, 'the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct.'" Morrell v. WW Int'l, Inc., 551 F.3d 173, 183 (S.D.N.Y. 2021) (citing In re Tobacco II Cases, 207 P.3d 20, 40 (Cal. 2009)). However, a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." Id.; see also In re Ferrero Litig., 794 F. Supp. 2d 1107 (S.D. Cal. 2011) (noting that the plaintiffs did not actually rely on the statements on the website before making their purchases and lacked standing under the UCL and FAL).

Here, Diaz has sufficiently established that, "in the absence of [D]efendant's misrepresentation or omission, [she] in all reasonable probability would not" have purchased the Product. Morrell, 551 F.3d at 183. Based on her exposure to Defendant's claim on the front of the Product, she clearly believed that the Product "would provide the %DV of protein consistent with the representation of 20 grams of protein per serving." Am. Compl. at ¶ 51. Her exposure to

the claim that the Product contained twenty grams of protein is enough to establish her "reliance on the alleged misrepresentation" of the Product's nutritional value, and is therefore sufficient to establish statutory standing. Kwikset, 246 P.3d at 887.

Accordingly, the Court declines to grant judgment on the pleadings against either named Plaintiff for lack of statutory standing.

### C. Preemption

The Supreme Court has held that the "historic police powers" of the states are "not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." United States v. Locke, 529 U.S. 89, 107 (2000). Additionally, the presumption against preemption is heightened "where federal law is said to bar state action in fields of traditional state regulation." N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995). When a preemption clause "is ambiguous or open to more than one plausible reading, courts 'have a duty to accept the reading that disfavors pre-emption.'" Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005). In the Second Circuit, courts may dismiss a claim on the affirmative defense of preemption "only if the facts alleged in the complaint do not plausibly give rise to a claim that is not preempted." Galper v. JP Morgan Chase Bank, N.A., 802 F.3d 437, 444 (2d Cir. 2015).

Defendant asserts that all of Plaintiffs' claims are preempted. Mot. at 16. Specifically, Defendant argues that (1) the "front-of-label" claim is *expressly* preempted because the relevant state causes of action are "not identical to" the Federal Food, Drug, and Cosmetic Act (FDCA) regulations, and (2) the omitted %DV claim is *impliedly* preempted because Plaintiffs are solely relying on the FDCA to bring their claim and there is no private right of action. Mot. at 16–20.

10

*1. Plaintiffs' front-of-label claims*

Where a statute includes an express preemption clause, "[the court] do[es] not invoke any presumption against pre-emption but instead focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent." <u>Puerto Rico v. Franklin Cal. Tax-Free Trust</u>, 579 U.S. 115, 125 (2016) (quotation marks and citation omitted).

The Nutrition Labeling and Education Act ("NLEA"), which amended the FDCA in 1990, states that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [21 U.S.C. § 343-1(a)] of the [FDCA]." NLEA § 6(c)(1). The applicable language from the FDCA contains the following express preemption:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement respecting any claim of the type described in section 343(r)(1) of this title made in the label or labeling of food that is *not identical to* the requirement of section 343(r) of this title . . . .

21 U.S.C.S. § 343-1(a) (emphasis added). Separate from the express preemption provision, the United States Food & Drug Administration ("FDA") has promulgated regulations on how information about nutrient content is provided on packaged foods. Several of these regulations are relevant here.

According to the FDCA regulations, manufacturers may use two different methods to measure protein content when displaying it on a product. These two methods are the "nitrogen method," which indicates the *total* protein in the product, and the "PDCAAS method" (Protein Digestibility Corrected Amino Acid Score), which represents the amount of *digestible* protein in the product. <u>See</u> 21 C.F.R. § 101.9(c)(7). Manufacturers may choose to include statements about protein on a product outside of the NFP, which are called "nutrient content claims." <u>See</u> 21 C.F.R. § 101.13(c). In this case, the statement "20g Protein" on the front label of the Product is a

nutrient content claim. If a nutrient content claim is made, additional information must be provided in the NFP. See 21 C.F.R. § 101.9(c)(7)(i). However, the regulations are silent on whether the nutrient content claims *themselves,* which are located *outside* the NFP, must be measured using the nitrogen method or the PDCAAS method.

In 2022, the FDA released guidance explaining that either the total protein (using the nitrogen method) or the digestible protein (using the PDCAAS method) is appropriate for nutrient content claims. See Industry Resources on the Changes to the Nutrition Facts Label, U.S. Food & Drug Administration (content current as of May 11, 2022), https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label ("FDA Guidance"). A district court in the Northern District of California has found "the FDA's explicit statement that nutrient content claims may be based on total protein, calculated using the nitrogen-content method, [to be] dispositive." Swartz v. Dave's Killer Bread, Inc., No. 4:21-CV-10053, 2022 WL 1766463, at *4 (N.D. Cal. May 20, 2022).

In this case, Plaintiffs have misinterpreted these regulations and attempt to incorrectly claim that they required Defendant to "use the more exacting PDCAAS methodology for such *front-of-the-label* protein claims." Resp. at 21 (emphasis added). Plaintiffs assert: "The FDCA and the FDA Guidance taken together show that when a manufacturer touts the protein content on the front of a product label . . . the FDCA and the FDA require the PDCAAS methodology." Id. at 24. Yet nowhere in their preceding argument do they cite a case that postdates the FDA Guidance released in 2022. Instead, Plaintiffs rely entirely on cases decided before issuance of the FDA guidance. See Resp. at 20; see also Minor v. Baker Mills, Inc., No. 20-CV-02901, 2020 WL 11564643 (N.D. Cal. Nov. 12, 2020); Ulrich v. Probalance, Inc., No. 16-CV-10488, 2017 WL 3581183 (N.D. Ill. Aug. 18, 2017); Porter v. NBTY, Inc., No. 15-CV-11459, 2016 WL

6948379 (N.D. Ill. Nov. 28, 2016); Gubala v. CVS Pharmacy, Inc., No. 14 C 9039, 2016 WL

1019794 (N.D. Ill. Mar. 15, 2016). Virtually all of those same courts have since declined to

follow those decisions since the FDA guidance in question was issued. See, e.g., Nacarino v.

Kashi Co., 584 F. Supp. 3d 806, 811, 811 n.4 (N.D. Cal. 2022) ("The plaintiffs also point out that

district courts addressing this issue [protein values] have come out the other way. Fair enough.

But for the reasons discussed above, this Court sees the issue differently and declines to follow

their lead. . . . It is also worth noting that these [protein value] rulings came down before the

FDA issued its most recent guidance on the topic."); Chong v. Kind LLC, 585 F. Supp. 3d 1215

(N.D. Cal. 2022) (holding that Minor was incorrectly decided and following the reasoning in

Nacarino).

The suggestion that Defendant should have used the corrected protein calculation is

beyond what is required by the FDCA, and is thus expressly preempted. See 21 U.S.C.S. § 343-

1(a). Therefore, to the extent that Plaintiffs' claims target the front-of-label nutrient content

claim on the Product, those claims are preempted.

   *2. %DV omission claims*

While express preemption invalidates laws that go beyond FDCA regulations, implied

preemption invalidates laws that overlap with FDCA regulations but do not rely on an

independent state tort law that predates the regulation in question. See Buckman Co. v.

Plaintiffs' Legal Comm., 531 U.S. 341, 353 (2001). In other words, if the violation of an FDCA

regulation is "a critical element" of a plaintiff's cause of action, then their lawsuit is duplicative

of FDCA regulations and therefore impliedly preempted by those regulations. Id. This is

because, when state law cause of action "assign[s] liability *solely* on the basis of fraud against

the FDA," it "impose[s] significant and distinctive burdens on the FDA and the entities it

regulates." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 98 (2d Cir. 2006), aff'd sub nom.

Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008). Therefore, the Second Circuit has held

that there can be no private state law cause of action if a plaintiff's "true goal is to privately

enforce alleged violations of the FDCA." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113

(2d Cir. 1997).

Express and implied preemption under the FDCA "operat[e] in tandem" and "have

created what some federal courts have described as a 'narrow gap' for pleadings." Glover v.

Bausch & Lomb, 6 F.4th 229, 237 (2d Cir. 2021) (citations omitted). "The plaintiff must be

suing for conduct that violates the FDCA (or else his claim is expressly preempted . . .), but the

plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be

impliedly preempted under Buckman)." Id. (quoting Bryant v. Medtronic, Inc. (In re: Medtronic,

Inc., Sprint Fidelis Leads Prods. Liab. Litig., 623 F.3d 1200, 1204 (8th Cir. 2010)).

In this case, Plaintiffs' claim that Defendant should have included a %DV is "identical

to" FDCA regulations and is, therefore, not *expressly* preempted. See 21 C.F.R. § 101.9(c)(7)(i).

However, Defendant argues that Plaintiffs are suing *because* the conduct violates the FDCA, and

that their claims are therefore *impliedly* preempted. See Mot. at 19–20.

Whether Plaintiffs' claims in this case fit through the acceptable "narrow gap," Glover, 6

F.4th at 237, or are impliedly preempted turns on whether they are simply trying to enforce a

violation of the FDCA for which there is no private right of action. Some factors that influence

this determination are: (1) whether the relevant state consumer laws preceded the FDCA, see

Buckman 531 U.S. at 353; (2) whether this area would fall under the traditional state police

powers, see Locke, 529 U.S. at 107; and (3) whether these FDCA regulations constitute a

"critical element" of their case, see Buckman 531 U.S. at 353.

All the California and New York state consumer laws at issue here predate the NLEA, which specifically regulates nutrient content claims. Compare Cal. Bus. & Prof'l Code § 17200, Cal. Bus. & Prof'l Code § 17500, Cal. Civ. Code § 1750, N.Y. CLS Gen. Bus. §§ 349, 350, with NLEA § 6(c)(1). These causes of action provide a remedy for false or misleading advertising and unfair or deceptive business practices. See Cal. Bus. & Prof'l Code § 17200, Cal. Bus. & Prof'l Code § 17500, Cal. Civ. Code § 1750, N.Y. CLS Gen. Bus. §§ 349, 350. This area of regulation, aimed at protecting consumer health and safety, would fall under traditionally state regulated police powers. See Medtronic, Inc. v. Lohr, 518 U.S. 470, 475 (1996). Therefore, the presumption against preemption is at its strongest here. See Buckman, 531 U.S. at 353.

However, the presumption against preemption does not save Plaintiffs' claims. It is true that the state consumer laws Plaintiffs are suing under do not regulate nutrient content claims specifically. See Am. Compl. ¶¶ 19–23. However, Plaintiffs rely on the FDCA regulations to claim that the failure to include a %DV resulted in misrepresentation. Notably, an entire portion of their Complaint is dedicated to laying out the FDCA regulations that Defendant has violated. Id. ¶¶ 25–35.

Plaintiffs argue that "Defendant's labeling practices are not the subject of the Complaint due to their mere technical violation of the FDCA," but instead that Defendants are liable because their statements are "false and misleading to reasonable consumers." Resp. at 15. Yet this declaration is not enough for Plaintiffs to avoid the fact that their argument is inextricably intertwined with the FDCA regulations, in the sense that they heavily rely on FDCA violations to establish that the statements at issue are misleading. For example, as Plaintiffs note in their Amended Complaint:

> Had Defendant disclosed the amount of %DV *as required by law*, Plaintiff[s] [] would have noticed that the Product provided a

> negligible amount of consumable protein and would not have purchased the Product or paid more for the product than [they] otherwise would have.

Am. Compl. ¶¶ 49, 52 (emphasis added). As another example, Plaintiffs note in their Response:

> Plaintiffs allege [the protein nutrient content claim] is misleading because if Defendant did comply with the FDCA, it would have [been] required to disclose that the protein within its Products contributed '0%' towards the consumer's daily protein intake.

Resp. at 17. Had Plaintiffs made an independent argument under the state consumer laws and not relied on the FDCA regulations to support their claim, Plaintiffs' case may have squeezed through the "narrow gap." Glover, 6 F.4th at 237. However, by basing their claims on FDCA violations, Plaintiffs claims fail because the statute does not provide a private cause of action. Accordingly, such claims are preempted.

While Plaintiffs' claims are preempted as articulated within their Amended Complaint, the Court does not dismiss the Amended Complaint with prejudice. Instead, Plaintiffs are afforded sixty (60) days to file a second amended complaint that fits within the "narrow gap" between implied and express preemption. Id.

In sum, all of Plaintiffs' claims are preempted. Any claims based on Defendant's failure to use the PDCAAS for the nutrient content claim on the front label is beyond what is required under the FDCA and is, therefore, expressly preempted. Any claims based on Defendant's failure to include a %DV in the NFP are predicated on violations of the FDCA, which provides no private right of action, and are therefore impliedly preempted.[1] Accordingly, Defendant's motion for judgment on the pleadings is granted. Plaintiffs are, however, afforded the opportunity to file a second amended complaint.

---

[1] To the extent that Plaintiffs attempt to bring a "hybrid claim," i.e. that the front label misrepresents the amount of digestible protein *because* of the omitted %DV, such claims would also be preempted for the reasons outlined above.

## V.      CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion for judgment on the pleadings (Dkt. No. 85) is **GRANTED**; and it is further

**ORDERED**, that all claims against Defendant are **DISMISSED without prejudice**; and it is further

**ORDERED**, Plaintiffs are permitted to file a second amended complaint within sixty (60) days of this Memorandum-Decision and Order; and it is further;

**ORDERED**, that the Clerk is directed to terminate this action if Plaintiffs fail to file a second amended complaint within sixty (60) days of this Memorandum-Decision and Order; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**


DATED:          September 15, 2023
                Albany, New York

LAWRENCE E. KAHN
United States District Judge