# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

STEPHEN DUNN AND RAQUEL DIAZ on behalf of all others similarly situated,

        Plaintiffs,

v.

ANCIENT BRANDS, LLC,

        Defendant.

Case No: 5:21-cv-390 (LEK/ML)

Judge Lawrence E. Kahn

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

## **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ........................................................................................................1

ARGUMENT ................................................................................................................2

      A.     Plaintiffs' Claims Are Not Preempted By FDCA ....................................3

      B.     Plaintiffs have Alleged Reliance, and Causation For Their %DV Omission Claims ........................................................................................11

      C.     Plaintiffs have Article III Standing to Pursue their %DV Omission Claims.........12

CONCLUSION............................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ackerman v. Coca–Cola Co.*,
    09 CV 0395, 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ....................................................6

*Allaire Corp. v. Okumus*,
    433 F.3d 248 (2d Cir. 2006).......................................................................................................2

*Anderson v. Apple Inc.*,
    500 F. Supp. 3d 993 (N.D. Cal. 2020) ...................................................................................11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)...................................................................................................................2

*Brown v. Natures Path Foods, Inc.*,
    No. 21-cv-05132-HSG, 2022 WL 717816 (N.D. Cal. Mar. 10, 2022) ...................................13

*C.f. Rausch v. Flatout, Inc.*,
    660 F. Supp. 3d 855 (N.D. Cal. 2023) .........................................................................8, 10, 11

*Consumer Advocates v. Echostar Satellite Corp.*,
    113 Cal.App.4th 1351 (2003) ...................................................................................................6

*Daniel v. Ford Motor Co.*,
    806 F.3d 1217 (9th Cir. 2015) ................................................................................................14

*Daniel v. Tootsie Roll Indus., LLC*,
    No. 17-CV-7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018)...................................3

*DeMuria v. Hawkes*,
    328 F.3d 704 (2d Cir. 2003).......................................................................................................2

*Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't*
    *of Educ.*,
    9 F.4th 91 (2d Cir. 2021) ...........................................................................................................2

*Dunn v. Ancient Brands, LLC*,
    No. 5:21-CV-390 (LEK/ML), 2023 WL 6037853 (N.D.N.Y. Sept. 15, 2023) ..............5, 8, 10

*Glover v. Bausch & Lomb*,
    6 F.4th 229 (2d Cir. 2021) .........................................................................................................4

*Herron v. Best Buy Co. Inc.*,
    924 F. Supp. 2d 1161 (E.D. Cal. 2013)..................................................................................7, 9

*In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*,
   588 F.Supp.2d 527 (S.D.N.Y. 2008) ................................................................. 6

*Klammer v. Mondelez Int'l, Inc.*,
   No. 22-CV-02046-JSW, 2023 WL 5748774 (N.D. Cal. Sept. 6, 2023) ...................... 8, 12, 14

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th at 326-27 (2011) ............................................................................ 13

*Lujan v. Def. of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................ 13

*Madani v. Volkswagen Grp. of Am., Inc.*,
   No. 17-cv-07287-HSG, 2019 WL 3753433 (N.D. Cal. Aug. 8, 2019) ...................... 14

*McNally v. The Port Auth. of N.Y. & N.J.*,
   414 F.3d 352 (2d Cir. 2005) .............................................................................. 3

*Moore v. Mars Petcare US, Inc.*,
   966 F.3d 1007 (9th Cir. 2020) ........................................................................... 13

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ............................................................................... 6

*N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
   514 U.S. 645 (1995) ........................................................................................ 3

*N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*,
   556 F.3d 114 (2d Cir. 2009) .............................................................................. 3

*Nacarino v. Kashi*,
   584 F. Supp. 3d 806 (N.D. Cal. 2022) ............................................................... 10, 11

*Roffman v. Perfect Bar, LLC*,
   No. 22-CV-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) ...................... 13

*Swearingen v. Amazon Pres. Partners, Inc.*,
   No. 13-cv-04402-WHO, 2014 WL 1100944 (N.D. Cal. Mar. 18, 2014) .................... 13

*United States v. Locke*,
   529 U.S. 89 (2000) ......................................................................................... 3

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008) ............................................................................ 6

*Woods v. Maytag Co.*,
   No. 10–CV–0559, 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010) .............................. 6

**Statutes**

21 U.S.C. §343 ....................................................................................................... *passim*

21 U.S.C. § 343–1(a) ...............................................................................................3, 4

21 U.S.C. § 343-1(a)(1) ..............................................................................................3

21 U.S.C. § 343(a) ...............................................................................................5, 11

Cal. Bus. & Prof. Code §17200 ...........................................................6, 9, 11, 13

Cal. Bus. & Prof. Code § 17500 ..............................................................6, 11, 13

Cal. Civ. Code §§ 1750 *et seq* ...................................................................9, 13

Cal. Health & Safety Code § 110100 ...................................................................6

N.Y. Public Health Law §71.05(d) ........................................................................5

New York Food, Drug and Cosmetic Act ...........................................................5

N.Y. Gen. Bus. Laws §§ 349 & 350 ..............................................................6, 11

NLEA ......................................................................................................................3, 4

Pub.L. No. 101–535, § 6(c)(1) ............................................................................3, 4

**Other Authorities**

21 C.F.R. § 101.9(c)(7)(i) ........................................................................................5

21 C.F.R. § 101.13(i)(3) ...........................................................................................5

58 Fed. Reg. at 2101 ...............................................................................................11

Fed. R. Civ. P. 12(b)(6) ............................................................................................2

Fed. R. Civ. P. 12(c) .................................................................................................2

Plaintiffs Stephen Dunn and Raquel Diaz respectfully submit this Opposition to Defendant Ancient Brands, LLC's Motion for Judgment on the Pleadings, ECF No. 110 ("Motion").

## INTRODUCTION

Defendant labels and manufactures the "Bone Broth Protein" powdered drink mixes (the "Products"). Like any protein drink, consumers purchase these "Bone Broth Protein" products on the basis that they provide high-quality protein to supplement their dietary protein intake. Indeed, Defendant's labeling does not disabuse consumers from believing their products are a quality protein supplement, as the products make several prominent "protein" claims. Yet, consumers do not get the benefit of this bargain. Instead, Defendant's products are poor protein dietary supplements. This is because the protein contained therein is indigestible and cannot be utilized by the body. Using the federally mandated Protein Digestibility Amino Acid Corrected Score ("PDCAAS")[1] testing methodology, Defendant's protein drinks have the lowest score: zero. Put differently, Defendant's "Bone Broth Protein" Products do not contribute to a persons' daily recommended protein intake.

Defendant does not dispute its "protein powders" have a zero PDCAAS score or that protein contained within is indigestible. Nonetheless, Defendant advertised its Products as a "Bone Broth Protein" and "Superfood Protein Powder." *See generally* Second Amended Complaint, ECF No. 103 ("SAC") at ¶ 46. When these representations are combined with the fact that the Products are also Dietary Supplements, a product that a reasonable consumer purchases primarily for their advertised nutritional contents (as opposed to their taste and/or satiating effect), Plaintiffs claim that the Defendant misrepresents the Products the quality of the Products' protein content. This is particularly true given the omission of the PDCAAS score, in the form of a percent daily value

---

[1] Defendant seems to challenge the validity of the PDCAAS scoring. MTD at p. 4 n. 1. But, this is a question that is beyond the scope this Motion.

("%DV").

Like Defendant's last Motion for Judgment on the Pleadings, Defendant challenges this case on procedural grounds, disputing Plaintiffs' standing and seeking to preempt their state law claims.  Additionally, Defendant also argues that Plaintiffs' claims must fail on their merits because Plaintiffs fail to allege reliance, causation, or injury.  These arguments are misplaced. First, Plaintiffs sought Defendant's "Bone Broth Protein" products specifically for the quality of the protein, including for the fact that they contribute to Plaintiffs' recommend daily intake of protein.  Thus, Plaintiffs suffered a traceable injury when they did not get the "Superfood Protein Powder" promised.  Additionally, under the preemption provision of the Food, Drug, and Cosmetics Act ("FDCA"), Plaintiffs' state law claims are expressly allowed, so long as they do not depart from federal food labeling standards and sound in traditional state consumer protection laws.  Accordingly, Defendant's Motion should be denied.

## ARGUMENT

The standards under Federal Rule of Civil Procedure 12(c) and Federal Rule of Civil Procedure 12(b)(6) are "indistinguishable." *DeMuria v. Hawkes*, 328 F.3d 704, 706 (2d Cir. 2003). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (quotation marks and citation omitted). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A.      **Plaintiffs' Claims Are Not Preempted By FDCA**[2]

The Supreme Court has held that the "historic police powers" of the states are "not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress." *United States v. Locke*, 529 U.S. 89, 107 (2000).  Additionally, the presumption against preemption is heightened "where federal law is said to bar state action in fields of traditional state regulation." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co*., 514 U.S. 645, 655 (1995). Courts apply the following analytical framework in determining Congressional intent to preempt state law:

> If the statute contains an express pre-emption clause, the task of statutory construction must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent. Where the language of the statute plainly indicates that Congress intended preemption, we must give effect to the plain language unless there is good reason to believe Congress intended the language to have some more restrictive meaning.

*McNally v. The Port Auth. of N.Y. & N.J*., 414 F.3d 352, 371 (2d Cir. 2005).

In 1990, Congress enacted Nutrition Labeling and Education Act ("NLEA") to "clarify and strengthen the [FDA's] legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about nutrients in foods." *N.Y.S. Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 118 (2d Cir. 2009).  As amended, the FDCA only preempts state food labeling requirements that are not identical to the FDCA's requirements.  *See* 21 U.S.C. § 343-1(a)(1); Pub.L. No. 101–535, § 6(c)(1) (Congress expressly provided that "[t]he [NLEA] shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under [section 343–1] of the [FDCA].");  *see also Daniel v. Tootsie Roll Indus., LLC*, No. 17-CV-7541 (NRB), 2018 WL 3650015, at *4 (S.D.N.Y. Aug. 1, 2018).  The NLEA further

---

[2] Defendant also argues that the front-of-label claims are preempted.  MTD pp. 9-10. However, Plaintiffs make no such claims in the Second Amended Complaint.

specifies that it "shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a)] of the [FDCA]." Pub. L. No. 101–535, § 6(c)(1).  Here, the language of the FDCA, as amended by the NLEA, is clear.  It does not preempt state causes of action that parallel the requirements of the FDCA.

Accordingly, as noted by this Court, in ruling on Defendant's previous Motion for Judgement on the Pleadings (ECF No. 102), there is a "narrow gap" to avoid preemption in food labeling cases:

> Express and implied preemption under the FDCA "operat[e] in tandem" and "have created what some federal courts have described as a 'narrow gap' for pleadings." *Glover v. Bausch & Lomb*, 6 F.4th 229, 237 (2d Cir. 2021) (citations omitted). "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted . . .), but the plaintiff must not be suing because the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Id*. (quoting *Bryant v. Medtronic, Inc.* (*In re: Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig*., 623 F.3d 1200, 1204 (8th Cir. 2010)).

ECF No. 102, at p. 14.  Put differently, "the cause of action may not exist 'solely by virtue of the FDCA [ ] requirements' and must be based on 'traditional state tort law,' or the claim will be impliedly preempted."  *Glover*, 6 F.4th at 239 *citing Desiano v. Warner-Lambert & Co*., 467 F.3d 85, 95 (2d Cir. 2006) (applying *Buckman* and concluding that plaintiffs' claims were not preempted because they were "asserting claims that sound in traditional state tort law").[3]  Plaintiffs

---

[3] Defendant cites the Court Motion to Dismiss Order (quoting *Buckman Co.*, 531 U.S. at 353) that "[w]hether Plaintiffs' claims can fit through this narrow gap turns on 'whether these FDCA regulations constitute a 'critical element' of their case.'"  MTD at p. 10.  But this "critical element" requirement is taken out of context.  The full quote from *Buckman* states "[i]n sum, were plaintiffs to maintain their fraud-on-the-agency claims here, they would not be relying on traditional state tort law which had predated the federal enactments in questions. On the contrary, the existence of these federal enactments is a critical element in their case."  *Buckman Co.*, 531 U.S. at 353.  The full quote makes it clear that preemption turns on whether the claim arising out of traditional areas of state law, and not solely based on the FDCA.  Indeed, given that in order to avoid preemption, Plaintiff must allege conduct that violates the FDCA, a violation of the FDCA is always going to be a critical element.

threaded this "narrow gap" because their claims sound in traditional state false advertising laws, but for conduct that also violate the FDCA.

Here, Defendant's labels are in violation of the FDCA and its associated regulations.  When a manufacturer makes a nutrient content claim for protein, it is required to provide a "Percent Daily Value" figure in the Nutrition Facts panels.  21 C.F.R. § 101.9(c)(7)(i) ("A statement of the corrected amount of protein per serving ... expressed as Percent of Daily Value, may be placed on the label, except that such a statement shall be given if a protein claim is made for the product... .").  Additionally, FDA's regulations provide that a label may only contain an explicit statement about the "amount ... of a nutrient" outside of the nutrition facts panel if the statement "is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). (That echoes the general provision of the FDCA, which provides that a food is misbranded if its labeling is "false or misleading in any particular." 21 U.S.C. § 343(a).).  Defendant makes a Protein Nutrient Claim on the front label of the Products but failed to provide the %DV of protein in the Nutrition Facts Panel and that renders Defendant's "Superfood Protein Powder" claims misleading.  SAC, at ¶¶ 29-34.  Accordingly, Defendant violates the FDCA.  While Defendant criticizes Plaintiffs for citing these regulations in its Second Amended Complaint, such citation is necessary because, as the Court held, Plaintiffs must allege that Defendant's conduct violates the FDCA, in addition to state law.  MTD at pp. 10-11; *Dunn v. Ancient Brands, LLC*, No. 5:21-CV-390 (LEK/ML), 2023 WL 6037853, at *7 (N.D.N.Y. Sept. 15, 2023).

Such conduct violates state food labeling law.  California and New York law incorporates the FDCA's standards, making them independently actionable.  N.Y. Public Health Law §71.05(d) (under the New York Food, Drug and Cosmetic Act, New York has expressly adopted the federal food labeling requirements and has stated "[a] food shall be deemed misbranded in accordance

with the Federal Food, Drug and Cosmetic Act (21 U.S.C. §343)[.]"); Cal. Health & Safety Code § 110100 (California's Sherman Law adopts the federal labeling regulations as the food labeling requirements of the state).   When Plaintiffs allege a violation of the FDCA, that is equally actionable under state law and there is no preemption.  *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F.Supp.2d 527, 532 (S.D.N.Y. 2008) ("In other words, state law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action, but are preempted where they impose obligations not imposed by federal law."); *Ackerman v. Coca–Cola Co.*, 09 CV 0395, 2010 WL 2925955, at *6 (E.D.N.Y. July 21, 2010) (claims under state laws that parallel the FDCA's requirements are not preempted).

But Plaintiffs' claims do not solely turn on violations of the FDCA, and its state law equivalent.  For example, Plaintiffs alleged that the %DV omission independently violations of the California Business and Professions Code §17200 ("UCL"), California's Consumer Legal Remedies Act ("CLRA"), California's False Advertising Law ("FAL"), and New York General Business Laws §§ 349 & 350.  *See, e.g.,* SAC, at ¶¶ 70-107.  Under the consumer protection laws of California [and] New York, . . . claims based on deceptive or misleading marketing must demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *accord Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal.App.4th 1351, 1360 (2003). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived."  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Similarly, material omissions are also actionable under the UCL, FAL, CRLA, and sections 349 & 350. *Woods v. Maytag Co.,* No. 10–CV–0559, 2010 WL 4314313, *15 (E.D.N.Y. Nov. 2, 2010) ("[W]hen a defendant exclusively possesses

information that a reasonable consumer would want to know and could not discover without difficulty, failure to disclose can constitute a deceptive or misleading practice.") (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)); *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (citing *In re Apple In–App Purchase Litig.,* 855 F.Supp.2d 1030, 1039 (N.D. Cal. 2012) (finding partial representation where defendant represented its iPhone app was free, made no representations about the potential for in-app purchases, and permitted players to make in-app purchases for a fifteen-minute period after entering a password) & *Goldsmith v. Allergan, Inc.,* No. CV 09–7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011) (finding partial representation where defendant made "literal[ly]" true product representation but a reasonable consumer could not use the product in the manner represented)).

Plaintiffs allege the omission of the %DV was deceptive. Plaintiffs alleged that Defendant described an active ingredient in the Products as "Bone Broth Protein" and which contain "Superfood Protein Powder." SAC, at ¶ 45. Additionally, the Products are sold as "Dietary Supplement" (and not a food product). *Id.* Plaintiffs assert that these representations, without clarification, are misleading because the Products do not provide a source of significant bioavailable protein. SAC, at ¶ 48. "Put differently, consumers do not get the quality of protein advertised and implied by Defendant's advertisements. These misrepresentations and/or omissions described herein are material, as the quality of protein in a protein dietary supplement would be material to a reasonable consumer." *Id.* Additionally, Plaintiffs alleged that had "Defendant disclosed the amount of %DV as required by law, Plaintiff Dunn would have noticed that the Product provided a negligible amount of consumable protein and would not have purchased the

Product or paid more for the product than he otherwise would have." *Id.,* at ¶¶ 53, 56.[4]  Such

allegations are more than mere citations to federal regulations, as Defendant suggests.  MTD, p.

11.

Several courts have found that the similar "% Daily Value" omissions are misleading under

state law:

> Here, Plaintiff has alleged that the label included protein content claims and failed
> to include the corrected amount of protein expressed as a PDV in the nutrition facts
> panel. Plaintiff further alleges that had MDLZ included the statement of corrected
> amount of protein, consumers would have understood that the "Product[ ] provide[s]
> significantly less of the daily value of protein than high quality protein products with
> comparable protein quantities." (SAC ¶ 83.) At this stage, Plaintiff's allegations are
> sufficient to allege that the omission of the PDV rendered the protein claims
> misleading.

*Klammer v. Mondelez Int'l, Inc.,* No. 22-CV-02046-JSW, 2023 WL 5748774, at *6 (N.D. Cal.

Sept. 6, 2023) *citing Lesh v. DS Nats., LLC,* No. 22-cv-01036-HSG, 2023 WL 2530986, at *5

(N.D. Cal. Mar. 15, 2023) (finding that the plaintiff plausibly alleged that the defendant's labels

could deceive a reasonable consumer where the plaintiff alleged that the labels, which made

protein content claims on the front without the PDV in the nutrition facts panel, masked that the

products contained "low quality" protein).  *C.f. Rausch v. Flatout, Inc.,* 660 F. Supp. 3d 855, 856-

57 (N.D. Cal. 2023) (noting that "if a product makes a 'protein claim' anywhere else on its label—

for instance, "Excellent source of protein!" or even just "20g of protein"—the FDA requires the

manufacturer to include additional information on the nutrition facts panel"); *id*., at 860-61 (stating

that "expectations created by statements like "excellent source of protein!" or "20g protein!" can

be tempered by looking at the percent daily value").

---

[4] Defendant claims that "Plaintiffs' deposition testimony that they did not understand what
%DV was or that it had no effect on their purchasing decision." MTD, at p. 11.  This argument
was already address and dismissed by the Court.  *See Dunn*, 2023 WL 6037853, at *3-4.

8

Even outside the food labeling context, failing to disclose material information necessary to give the proper context to claims regarding quantifiable aspects of a product can be misleading. For example, a court found that representing a laptop's battery life as "up to 3.32 hours," when no reasonable consumer could expect this battery life through normal use, was a partial representation under the UCL and CLRA, that was deceptive without disclosing how the "3.32 hours" was calculated. *Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161, 1177 (E.D. Cal. 2013) (citing *In re Apple In–App Purchase Litig.,* 855 F.Supp.2d 1030, 1039 (N.D. Cal. 2012) (finding partial representation where defendant represented its iPhone app was free, made no representations about the potential for in-app purchases, and permitted players to make in-app purchases for a fifteen-minute period after entering a password), *Goldsmith v. Allergan, Inc.,* No. CV 09–7088 PSG (Ex), 2011 WL 2909313, at *5 (C.D. Cal. May 25, 2011) (finding partial representation where defendant made "literal[ly]" true product representation but a reasonable consumer could not use the product in the manner represented)). Here, Plaintiffs' claims do not solely rely on violations of the FDCA, but sound in traditional state causes of action.

Defendant counters that "the labels contain a detailed breakdown of how much collagen, chondroitin, hyaluronic acid, and glucosamine are contained in each serving," therefore the label is not misleading. MTD, at p. 12 *citing* RJN Ex. 3. Yet, hyaluronic acid and glucosamine are not proteins and, nowhere on the label does it give a breakdown of all the "proteins" contained in its "Bone Borth Protein Concentrate [or blend]." *See* RJN Ex. 3. Accordingly, consumers could not calculate the %DV (or conduct any other analysis of the quality of the protein in the Products) themselves if so inclined. *Id.*

Defendant also argues that "%DV is a creation of federal law, meaning that the alleged federal violation would necessarily be an element of any state law claim to enforce this supposed

duty" and the label is only deceptive if "consumers understand the complex web of federal regulations regarding the calculation of protein content and PDCAAS."  MTD, at pp. 11-12. Defendant, however, ignores the purpose of these regulations.  As noted by Judge Chhabria in *Rausch v. Flatout, Inc.*[5],

> But that part of *Nacarino* was (with apologies) wrong. The better reading of the FDA's regulations is that prominently advertising a product's protein quantity outside of the nutrition facts panel *is* misleading (within the meaning of the Food, Drug, and Cosmetic Act and the FDA's regulations), if the manufacturer doesn't include the quality-adjusted percent in the nutrition facts panel. As a matter of common sense, it's reasonable to think that small text in the nutrition facts panel is less likely to mislead a consumer than text advertising the protein content on the front of a label. When a manufacturer chooses to emphasize a product's protein content elsewhere on a label, the manufacturer is implicitly suggesting that the product is a good source of protein. In effect, it's encouraging consumers to buy the product based off that feature. That's not the case when the manufacturer includes the amount of protein in the nutrition facts panel (something manufacturers must do on all products). *See* 21 U.S.C. § 343(q)(1)(D). Thus, the FDA's regulations are best understood as reflecting a determination that when a manufacturer emphasizes a product's protein content, that statement is misleading without including information about the product's protein quality on the nutrition facts panel.

> * * *

> It might be true that reasonable consumers aren't looking at a food with, say, 20% of the daily value of protein and thinking, "Well, the FDA recommends 50 grams of protein a day, so this product must have 10 grams of digestible protein." But that doesn't seem to be what the FDA is contemplating. The FDA is generally skeptical that consumers know exactly how much of any nutrient they should be consuming every day. *See*, *e.g.*, 56 Fed. Reg. 60421-01, 60426 (Nov. 27, 1991). That's why the FDA thinks the percent daily value is helpful: it gives consumers a sense of how the food might fit into their broader nutritional needs. So, a consumer might see "20% of the daily value of protein" and think, "I'd have to eat roughly five of these to get enough protein for the day." That doesn't require any complicated math, and that information puts the potentially misleading protein statement in context. The expectations created by statements like "excellent source of protein!" or "20g

---

[5] Judge Chhabria's decision in *Rausch* is significant.  As noted in the decision, he specifically overturned the contrary *dicta* in from his previous opinion in *Nacarino v. Kashi*, 584 F. Supp. 3d 806 (N.D. Cal. 2022).  *Nacarino* was cited by this Court, and others, for its reasoning on preemption. *C.f. Dunn*, 2023 WL 6037853, at *6 *citing Chong v. Kind LLC*, 585 F. Supp. 3d 1215 (N.D. Cal. 2022) (holding that *Minor* was incorrectly decided and following the reasoning in *Nacarino*).

protein!" can be tempered by looking at the percent daily value.

*Rausch*, 660 F.Supp.3d 860-61. Here, "it seems that the FDA has imposed this requirement under its authority to regulate misleading labels, found in section 343(a)." *Id.* "Assuming the FDA adopted this requirement based on its statutory authority to regulate misleading statements, it's not much of a leap to say that failure to follow the requirement renders a label misleading." *Id.,* at 862. And whether it is under the UCL, FAL, CLRA, sections 349 and 350, warranty, or tort law, misleading product labels have been traditionally proscribed.

### B.   Plaintiffs have Alleged Reliance, and Causation For Their %DV Omission Claims

Defendant contends that "Plaintiffs must plead they saw that the products did not include a %DV and, based on their familiarity with the federal regulations regarding protein content claims and PDCAAS, inferred that the products contained a higher 'quality' than the collagen, chondroitin, hyaluronic acid, and glucosamine disclosed on the labels" Motion at p. 13. This is incorrect based on a couple of recent decisions that have come out since the decisions cited by Defendant in its favor.

*Rausch v. Flatout, Inc.* once again is instructive. There, the plaintiff alleged the product label misled a reasonable consumer because it made a protein claim on the front of the label and did not include the %DV on the back of the product label. The court held "it's plausible that Flatout's labels could deceive a reasonable consumer." 660 F. Supp. 3d 855, 863. See *Nacarino*, 584 F. Supp. 3d at 809; 58 Fed. Reg. at 2101 (noting that "information on protein quantity alone can be misleading on foods that are of low protein quality"). "And without clear guidance from California courts, this Court finds that the economic loss rule does not bar Rausch's claims." 660 F. Supp. 3d 855, 863 (citing *Clenney v. FCA US LLC*, No. 22-CV-00547-VC, 2022 WL 2197074, at *4 (N.D. Cal. June 20, 2022)); *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1019–1022 (N.D.

Cal. 2020).

Despite Defendant's contentions, a "specific factual allegations that plaintiffs relied on that omission" is not required and was recently rejected in *Klammer*. "Indeed, the fact that FDA requires the corrected amount of protein in certain circumstances suggests that consumers rely on this information to clarify the quality and quantity of protein in a particular product. *Klammer v. Mondelez Int'l, Inc.*, No. 22-CV-02046-JSW, 2023 WL 5748774, at *5 (N.D. Cal. Sept. 6, 2023). "Thus, MDLZ's argument that Plaintiff's allegations of reliance are implausible because his review of the nutrition facts panel would have revealed that the chips contain only 3 grams of protein per serving is unpersuasive." *Id.* "The Court concludes Plaintiff's allegations of reliance are plausible." *Id.*

Plaintiffs have alleged they reviewed the front and back of the product labels. SAC ¶¶ 52, 55. Plaintiffs sought Defendant's "Bone Broth Protein" products specifically for the quality of the protein, including for the fact that they contribute to Plaintiffs' recommend daily intake of protein. *Id.* ¶ 35. Plaintiffs believed that the product would provide the %DV of protein consistent with the representation of 20 grams of protein per serving and would benefit them consistent with what consumers expect other protein powders to provide with respect to their protein claims. *Id.* Thus, Plaintiffs suffered a traceable injury when they did not get the "Superfood Protein Powder" promised. Nothing more is required at this stage and Defendant's hyper technical causation arguments should be rejected.

### C.    Plaintiffs have Article III Standing to Pursue their %DV Omission Claims

Defendant contends Plaintiffs do not have Article III standing for their DV% omission claims, and their case should be dismissed.  Motion at pp. 12-15. Curiously, even though Defendant concedes the Court already found Plaintiffs had standing (Dismissal Order at 7), this conclusion is

inapplicable because Plaintiffs must prove "their understanding of federal protein content regulations that the product contained a higher 'quality' of protein than it supposedly in fact did". Motion at pp. 14. Again, Defendant's hyper technical pleading requirements are not supported by law and are inconsistent with the testimony provided by Plaintiffs.

Article III standing to sue requires that (1) the plaintiff suffered an injury in fact, i.e., "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "'fairly traceable' to the challenged conduct," and (3) the injury is "likely" to be "redressed by a favorable decision." *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992).

To establish standing under the UCL, CLRA, or FAL, a plaintiff must allege reliance on the purported misrepresentations at issue and economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th at 326-27 (2011); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022); *see also Swearingen v. Amazon Pres. Partners, Inc.*, No. 13-cv-04402-WHO, 2014 WL 1100944, at *3 (N.D. Cal. Mar. 18, 2014) ("As with the UCL, [p]laintiffs must allege reliance on the specific marketing materials claimed to be misleading in order to establish standing to bring claims under the ... CLRA.") (internal quotation and citation omitted). " 'A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging ... that he or she would not have bought the product but for the misrepresentation.' " *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1020 (9th Cir. 2020) (quoting *Kwikset*, 51 Cal. 4th at 330,). "[T]he reliance requirement also applies to a claim under the UCL's unlawful prong where the underlying conduct is not a misrepresentation or fraud." *See Roffman v. Perfect Bar, LLC*, No. 22-CV-02479-JSC, 2022 WL 4021714, at *6 (N.D. Cal. Sept. 2, 2022) (collecting cases).

To demonstrate actual reliance for a fraudulent omission claim, a plaintiff must allege that "had the omitted information been disclosed, he would have been aware of it and behaved differently.' " *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)). "The standard for pleading reliance on account of an omission is low." *Madani v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-07287-HSG, 2019 WL 3753433, at *11 (N.D. Cal. Aug. 8, 2019).

In *Klammer*, No. 22-CV-02046-JSW, 2023 WL 5748774, at *5, the court found similar allegations were sufficient for standing purposes: "[h]ere, Plaintiff alleges that '[h]e looked at and read the nutrition facts panel on the Product before purchasing them' and that had MDLZ 'adequately disclosed the corrected amount of protein per serving...expressed as a %DV, as FDA regulations require, Plaintiff would not have purchased the Products'....Plaintiff further alleges that he 'regularly checks the nutrition facts panel before purchasing any product...and uses that information as a basis of comparison between similar products' and that 'he prefers products that provide more of the recommended daily amount of protein…'" *Id.* "[t]he Court finds that Plaintiff has sufficiently alleged reliance on the omission of the PDV from the nutrition facts panel." *Id.*

Not only have Plaintiffs made numerous allegations in the SAC they relied upon the back of the Products' labels (SAC  ¶¶ 52, 55), Plaintiffs testified numerous times that the %DV for protein on the back of a product label would have been important factor in their purchasing decisions and was material to them.  Dunn Dep. Tr. at pp. 94:2-4, 96:6-9, 95:5-8, 93:16-25; Diaz Dep. Tr. at p. 76:10-19.  Plaintiff Diaz testified that the "front should match the back" regarding stated protein on the front and corresponding %DV.  Diaz Dep. Tr. at pp. 75:1-4, 37:19-23.  She testified that she believed was getting the normal DV% for 20g of protein when consuming the product and that she received a comparable amount of DV% as the other protein powders she

14

purchased, and that the digestible of protein was important. *Id.* at pp. 76:10-19 (Q. And that's why you -- it -- and so is the percentage DV, is that an important factor for you in purchasing protein powders? A. Yes, it is.), 78:9-79:16.  Plaintiff Diaz also testified the %DV should be on the back of the product label. *Id.* at p. 72:20-22.

Looking at either the SAC or Plaintiffs' extensive testimony on the subject, Plaintiffs have sufficiently alleged the %DV omission on the back of the Product's label was material to them and have established standing.

## **CONCLUSION**

For the reasons stated herein, Defendant's Motion should be denied in its entirety.

January 16, 2023                                                    Respectfully submitted

<div style="margin-left: 50%;">

*/s/ J. Hunter Bryson*

J. Hunter Bryson *(pro hac vice)*
Russell M. Busch (Bar No. 5881354)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
405 E.  50th Street
New York, NY 1002
Tel:    (919) 539-2708
Fax:    (919) 600-5035
Email: hbryson@milberg.com
Email: rbusch@milberg.com


Nick Suciu III *(pro hac vice)*
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel.:    (313) 303-3472
Fax:    (865) 522-0049
Email: nsuciu@milberg.com

</div>

15

Katrina Carroll (pro hac vice)
Nicholas R. Lange (pro hac vice)
**LYNCH CARPENTER, LLP**
111 W. Washington Street, Suite 1240
Chicago, IL 60602
Telephone: (312) 750-1265
Facsimile: (773) 598-5609
Email: katrina@lcllp.com
Email: nick@lcllp.com

Todd S. Garber
**FINKELSTIEN, BLANKINSHIP, FREI,
PERSON & GARBER, LLP**
One N. Broadway, Suite 900
White Plains, New York 10601
Tel: (914) 298-3281
Fax: (914) 824-1561
Email: tgarber@fbfglaw.com

*Counsel for Plaintiffs and the Proposed
Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on January 16, 2024 the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

<div align="right">

*/s/ J. Hunter Bryson*
J. Hunter Bryson

</div>