UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STEPHEN DUNN and RAQUEL DIAZ
*on behalf of all others similarly situated*,

                                    Plaintiffs,

        -against-                                       5:21-CV-390 (LEK/ML)

ANCIENT BRANDS, LLC,

                                    Defendant.

_____

## MEMORANDUM-DECISION AND ORDER

### I.       INTRODUCTION

Plaintiffs Stephen Dunn and Raquel Diaz, individually and on behalf of a class of others

similarly situated, commenced this action against Defendant Ancient Brands, LLC, on April 5,

2021, alleging unfair and deceptive business practices. See Dkt. No. 1. Plaintiffs filed an

amended complaint on April 5, 2022. Dkt. No. 59 ("First Amended Complaint" or "FAC"). After

this Court dismissed Plaintiffs' First Amended Complaint on September 15, 2023, Dkt. No. 102

("September 2023 MDO"), Plaintiffs filed a second amended complaint on November 14, 2023,

Dkt. No. 103 ("Second Amended Complaint" or "SAC"). Now before the Court is Defendant's

motion for judgment on the pleadings. Dkt. No. 110 ("Motion").[1] Plaintiffs filed a response

opposing the motion, Dkt. No. 111 ("Response"), and Defendant has submitted a reply, Dkt. No.

112 ("Reply").

For the reasons that follow, Defendant's Motion is denied.

---

[1] Defendant also requests that this Court takes judicial notice of certain exhibits when
considering the Motion. Dkt. No. 110-5. Given that Plaintiffs do not appear to oppose the
request, and given that the request meets the requirements under Federal Rule of Evidence 201,
the request is granted.

## II.   BACKGROUND

The Court assumes familiarity with the factual background of this case, as detailed in the

Court's previous Memorandum-Decision and Order. See Sept. 2023 MDO at 2–3.

In its September 2023 MDO, the Court outlined that Plaintiffs' claims fell into two

primary categories:

> First, Plaintiffs bring a "front-of-label" claim in which they allege
> misrepresentations from Defendant's failure to use the PDCAAS
> calculation for the "20g Protein" nutrient content claim displayed on
> the front of the Product. Second, Plaintiffs bring a claim in which
> they allege misrepresentations from Defendant's failure to include
> the %DV for protein in the NFP [(Nutrition Facts Panel)] on the
> back of the product.

Id. at 4 (internal citations omitted). The Court ultimately concluded that Plaintiffs' claims were

preempted. Specifically, the Court found that (1) Plaintiffs' "front-of-label" claims were

expressly pre-empted because the claims alleged requirements beyond those in federal

regulations established pursuant to the Food, Drug, and Cosmetic Act ("FDCA"), id. at 11–13;

and (2) Plaintiffs' omitted percentage daily value ("%DV") claims were impliedly preempted

because the claims were brought under the FDCA, which does not confer private rights of action,

id. at 13–16.

Plaintiff's Second Amended Complaint pleads the same claims as the First Amended

Complaint. Compare FAC ¶¶ 66–124, with SAC ¶¶ 70–128. The major difference between the

First Amended Complaint and the Second Amended Complaint is that the Second Amended

Complaint contains additional allegations stating (1) that the products at issue (the "Products")

run afoul of false and misleading advertising prohibitions under California and New York law,

see SAC ¶¶ 43–45; (2) that Defendants failed to disclose the quality of the protein contained in

the Products despite having a duty to do so, see id. ¶ 46; (3) that a consumer could not

"reasonably obtain the omitted information regarding the digestibility and quality of the

Products' protein," id. ¶ 47; (4) that the Products "do not provide a source of significant bioavailable protein," id. ¶ 48; (5) that Defendant's conduct is similar to other historical deceptive practices, see id. ¶ 49; and (6) that customers suffered injury due to Defendant's actions, see id. ¶ 50. Plaintiffs state that they are no longer prosecuting their "front-of-label" claims. See Resp. at 8 n.2.[2] The Court will therefore not construe the Second Amended Complaint as alleging "front-of-label" claims.

## III.   LEGAL STANDARD

The standards under Federal Rule of Civil Procedure 12(c) and Federal Rule of Civil Procedure 12(b)(6) are "indistinguishable." DeMuria v. Hawkes, 328 F.3d 704, 706 n.1 (2d Cir. 2003). Therefore, to survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ., 9 F.4th 91, 94 (2d Cir. 2021) (quotation marks and citation omitted). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of a plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). A complaint may be dismissed only where it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Where a court is unable to infer more than the mere

_____

[2] Page numbers refer to ECF pagination.

possibility of the alleged misconduct based on the pleading facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678–79.

## IV. DISCUSSION

### A. Implied Preemption

Defendant first argues that Plaintiffs' claims in the Second Amended Complaint are preempted for the same reasons that the Court found Plaintiffs' claims in the First Amended Complaint were preempted. See Mot. at 16–18. Specifically, Defendant argues that the Second Amended Complaint "relies on the FDCA regulations," and are therefore impliedly preempted. Id. at 17.

As the Court explained in its September 2023 MDO, implied preemption invalidates laws that overlap with FDCA regulations but do not rely on an independent state tort law that predates the regulation in question. See Sept. MDO at 13–14. In other words, if the violation of an FDCA regulation is "a critical element" of a plaintiff's cause of action but lacks a cause of action from a traditional state tort law predating the FDCA, then their lawsuit is duplicative of FDCA regulations and therefore impliedly preempted by those regulations. Buckman, 531 U.S. at 353. This is because, when state law cause of action "assign[s] liability *solely* on the basis of fraud against the FDA," it "impose[s] significant and distinctive burdens on the FDA and the entities it regulates." Desiano v. Warner-Lambert & Co., 467 F.3d 85, 98 (2d Cir. 2006), aff'd sub nom. Warner-Lambert Co., LLC v. Kent, 552 U.S. 440 (2008). Therefore, the Second Circuit has held that there can be no private state law cause of action if a plaintiff's "true goal is to privately enforce alleged violations of the FDCA." PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1113 (2d Cir. 1997).

4

Express and implied preemption under the FDCA "operat[e] in tandem" and "have created what some federal courts have described as a 'narrow gap' for pleadings." Glover v. Bausch & Lomb Inc., 6 F.4th 229, 237 (2d Cir. 2021) (citations omitted). "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted . . .), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under Buckman)." Id. (quoting Bryant v. Medtronic, Inc. (In re: Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.), 623 F.3d 1200, 1204 (8th Cir. 2010)).

In the September 2023 MDO, the Court found that Plaintiffs' First Amended Complaint had failed to pass through the "narrow gap" for pleadings. See Sept. MDO at 15–16. The Court noted that "Plaintiffs rely on the FDCA regulations to claim that the failure to include a %DV resulted in misrepresentation. Notably, an entire portion of their Complaint is dedicated to laying out the FDCA regulations that Defendant has violated." Id. at 15. The Court further found that Plaintiffs' claims were "inextricably intertwined with the FDCA regulations, in the sense that they heavily rely on FDCA violations to establish that the statements at issue are misleading." Id. Yet the Court also highlighted that "[h]ad Plaintiffs made an independent argument under the state consumer laws and not relied on the FDCA regulations to support their claim, Plaintiffs' case may have squeezed through the 'narrow gap.'" Id. at 16 (citation omitted).

In reviewing the Second Amended Complaint, the Court finds that Plaintiffs have fixed the deficiencies in their prior filings and have passed through the "narrow gap." Defendant argues that "[l]ike the FAC, the SAC contains the same formulaic allegations that each Plaintiff would not have purchased the [P]roduct had Ancient Nutrition 'disclosed the amount of %DV as required by law.'" Mot. at 17 (quoting SAC ¶¶ 54, 57). Yet Plaintiffs' new allegations do in fact contain more than mere formulaic allegations. Plaintiffs' Second Amended Complaint explicitly

describes how the labeling practices were false and misleading under California and New York Law. See SAC ¶¶ 43–50. The new allegations do not merely recite FDCA regulations; rather, they provide an explanation of how the labeling is in violation of state law. This is precisely the kind of allegations that pass through the "narrow gap." Plaintiffs' claims are therefore not impliedly preempted.

**B. Reliance, Causation, or Injury**

Defendant next contends that "Plaintiffs do not plausibly state a claim for relief," as Plaintiffs have failed "to plead they relied on the alleged omission, that it caused their injury, and that they suffered an injury cognizable at law." Mot. at 18.

As Defendant correctly points out, see id., to prevail on their state law claims, Plaintiffs must show reliance, causation, and injury. See City of New York v. Smokes-Spirits.Com, Inc., 12 N.Y.3d 616, 623 (2009) (finding that the actual injury requirement applies to claims under New York General Business Laws § 349); In re Tobacco II Cases, 207 P.3d 20, 39 (Cal. 2009) (holding that the UCL requires reliance, causation, and injury); Cnty. of Santa Clara v. Atl. Richfield Co., 40 Cal. Rptr. 3d 313, 345 (Cal Ct. App. 2006) (noting that the elements of fraudulent concealment are "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage"); Swersky v. Dreyer & Traub, 643 N.Y.S.2d 33, 36 (App. Div. 1996) (finding that the elements of fraudulent misrepresentation are "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiffs thereby, (3) the plaintiffs reasonably relied upon the representation, and (4) the plaintiffs suffered damage as a result of their reliance"). To plead reliance, New York and California courts require a plaintiff "to allege that it was induced to act or refrain from acting to

6

its detriment by virtue of the false representation." <u>Ideal Steel Supply Corp. v. Anza</u>, 882

N.Y.S.2d 190, 191 (App. Div. 2009); <u>see also</u> <u>Small v. Fritz Companies, Inc.</u>, 65 P.3d 1255,

1259 (Cal. 2003) ("[O]ne who makes a fraudulent misrepresentation is subject to liability to the

persons or class of persons whom he intends or has reason to expect to act or to refrain from

action in reliance upon the misrepresentation.") (emphasis omitted).

     Defendant largely argues that Plaintiffs have failed to state a claim for relief because

Plaintiffs have failed to plead reliance. <u>See</u> Mot. at 19.[3] Specifically, Defendant states that

Plaintiffs have not alleged that "they saw that the products did not include a %DV and, based on

their familiarity with the federal regulations regarding protein content claims and PDCAAS

[amino acid profile], inferred that the products contained protein of a higher 'quality' than the

collagen, chondroitin, hyaluronic acid, and glucosamine disclosed on the labels." <u>Id.</u>

     Defendant cites the case <u>Lesh v. DS Nats., LLC</u>, No. 22-CV-1036, 2023 WL 2530986

(N.D. Cal. Mar. 15, 2023) to support its argument. <u>See</u> Reply at 7. In that case, the court

considered whether the plaintiff had "allege[d] that they relied on the defendant's purported

misrepresentations and suffered economic injury as a result" in a case involving purported

misrepresentations of protein digestibility. 2023 WL 2530986, at *1–3. The defendant in <u>Lesh</u>

"argue[d] that Plaintiff lacks standing to bring her NFP claims because she does not allege that

she relied on any information in the NFP when purchasing the products." <u>Id.</u> at *3. The court

ultimately found that the plaintiff's pleadings were not sufficient, as the plaintiff did not state

that she reviewed the back nutrition label "or that she relied on the purported absence of the

percent of daily value figure when she made her purchases." <u>Id</u>. This set of facts is inapposite to

---

[3] Defendant does not appear to argue that Plaintiffs have failed to plead causation or injury. <u>See</u>
Mot. at 8–9. Accordingly, the Court assumes that Plaintiffs satisfy these elements.

the instant case. Here, Plaintiffs have pled that they saw "the claims on the front and the back of the packaging," Am. Compl. ¶¶ 52, 55, and specifically state that, had Defendant disclosed the %DV, Plaintiffs "would not have purchased the Product[s]," id. ¶¶ 53, 56. These are precisely the kind of showings that the plaintiff in Lesh failed to make, thus demonstrating the inapplicability of Lesh to the instant case.

Plaintiffs cite to a more analogous case: Klammer v. Mondelez Int'l, Inc., No. 22-CV-2046, 2023 WL 5748774 (N.D. Cal. Sept. 6, 2023). See Resp. at 16–17. Plaintiffs argue that Klammer rejects Defendant's proposition that Plaintiffs' must plead "specific factual allegations that plaintiffs relied on that omission." Id. at 17 (quoting Mot. at 19). In that case, the plaintiff pled that "he looked at and read the nutrition facts panel on the Product before purchasing them and that had MDLZ adequately disclosed the corrected amount of protein per serving expressed as a %DV, as FDA regulations require, [p]laintiff would not have purchased the Products." Klammer, 2023 WL 5748774, at *5 (cleaned up). Although the plaintiff did not specifically plead that he relied on the %DV omission, the Klammer court nevertheless found that the plaintiff's pleadings were sufficient. See id. The Court finds Klammer to be a useful analogy. Klammer indicates that a plaintiff need not expressly state that she relied on a %DV omission, and that other indicia may be used to show reliance. While Plaintiffs here have not plead that they relied on the %DV omission, they have, similar to the plaintiff in Klammer, plead that they looked at the back of the Products and would not have purchased the Products if the %DV was disclosed. See Am. Compl. ¶¶ 52–53, 55–56. Given the guidance from Klammer, the Court is satisfied Plaintiffs have successfully plead reliance.

**C.  Article III Standing**

Finally, Defendant argues that Plaintiffs lack Article III standing. To establish Article III standing, a plaintiff must show that: (1) she suffered an "injury-in-fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) there was a "causal connection between the injury and the conduct complained of;" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992) (cleaned up). The "causal connection" prong requires that the plaintiff's injury be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." Id. at 560 (cleaned up).

The Second Circuit has held that "'at [the pleading] stage of the litigation,' the plaintiffs' 'burden . . . of alleging that their injury is "fairly traceable" to' the challenged act 'is relatively modest.'" Rothstein v. UBS AG, 708 F.3d 82, 92 (2d Cir. 2013) (quoting Bennett v. Spear, 520 U.S. 154, 171 (1997)). Although the nexus is most easily established if there is "a direct relationship between the plaintiff and the defendant with respect to the conduct at issue," indirectness of an injury "is not necessarily fatal to standing, because the fairly traceable standard is lower than that of proximate cause." Id. at 91 (cleaned up). Although "an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause," it is "not necessarily a basis for finding that the injury is not fairly traceable to the acts of the defendant." Id. at 92 (quotation marks omitted). To prevail in response to a motion to dismiss on standing grounds, for instance, a plaintiff's injury "would satisfy the fairly traceable requirement if they had alleged all the links in the chain of causation." Heldman v. Sobol, 962 F.2d 148, 156 (2d Cir. 1992) (citing Allen v. Wright, 468 U.S. 737, 757–58 (1984)).

Defendant notes that, in the September 2023 MDO, the Court found that Plaintiffs had established sufficient grounds for Article III standing. See Mot. at 20. Yet Defendant argues that decision "was based on Plaintiffs' old theory" (i.e., Plaintiffs' FDCA violation theory), and that Plaintiffs have failed to establish standing under their "new theory." Id. Defendant posits that Plaintiffs' new theory requires "Plaintiffs to prove they did not just see the labels but inferred from the absence of %DV and their understanding of federal protein content regulations that the product contained a higher 'quality' of protein than it supposedly in fact did." Id. This is far too narrow of a reading of what Plaintiffs must show. Plaintiffs must only show that they relied on a Defendant's misrepresentation and that Plaintiffs suffered economic injury as a result. See, e.g., Brown v. Natures Path Foods, Inc., No. 21-CV-5132, 2022 WL 717816, at *4 (N.D. Cal. Mar. 10, 2022) ("And to plead standing under the FAL, CLRA, or UCL, a plaintiff must also allege that they relied on the defendant's purported misrepresentations and suffered economic injury as a result.").

Plaintiffs convincingly cite to Klammer to demonstrate that they meet the required standing elements. See Resp. at 19. As noted in supra Part IV.B, the Klammer court established reliance based on a set of facts that are similar to the instant case. See Klammer, 2023 WL 5748774, at *5. Because the plaintiff in Klammer had shown reliance, the court was satisfied that the plaintiff had established Article III standing. See id. Given the factual similarities between Klammer and the instant case—and given that the Court has already explained that Plaintiffs have pled reliance, see supra Part IV.B—the Court finds that the Klammer analogy weighs heavily in favor of finding Article III standing.

Finally, in the September 2023 MDO, the Court noted that Plaintiffs had adequately shown standing because Plaintiffs alleged "a sufficient causal connection between Plaintiffs'

injury (paying more for a product than they otherwise would have) and Defendant's conduct (the '20g Protein' nutrient content claim on the front of the package and the missing %DV in the NFP)." Sept. MDO at 5. Plaintiffs were required to make the same showing in their Amended Complaint, and have done so. See Am. Compl. ¶¶ 52–53, 55–56. In this respect, Plaintiffs' Amended Complaint neatly mirrors the language in the original Complaint—and that language is enough to establish standing. The Court therefore finds that Plaintiffs have made a sufficient showing of Article III standing.

## V.   CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendant's motion for judgment on the pleadings, Dkt. No. 110, is **DENIED**; and it is further

**ORDERED,** that the Clerk serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     May 29, 2024
            Albany, New York

LAWRENCE E. KAHN
United States District Judge